Pierson *v.* Mosher.

[Monroe General Term, September 5, 1859. *T. R. Strong, Smith* and *Johnson,* Justices.]

————•‑•‑•————

Pierson *vs.* Samuel Mosher and Arvid Mosher.

Where a division fence between adjoining owners has been in existence, and acquiesced in by the parties as on their dividing line, for more than forty years, the law will determine the line of such fence to be the true line between the parties. And this, notwithstanding the fence was originally put up under an agreement that it was to be altered at some future time, in case it should be found, upon actual survey, not to be on the true line.

In such cases, it is the long acquiescence which renders the practical location conclusive.

THIS action was commenced in this court to recover possession of a strip of land. It was tried at the Cayuga circuit, before Judge Davies and a jury, in October, 1858. The plaintiff and defendants own lands adjoining each other. In April, 1815, John Owen, under whose title the plaintiff claims,

Pierson *v.* Mosher.

purchased of Humphrey Sharpsteen the west half of fifty acres of land, then in the township of Milton, now in the town of Genoa. The defendant Samuel Mosher, at the same time, purchased of the same grantor the east half of the same fifty acres. In the same month, Owen and Mosher divided the land between them, and fixed the place for the division fence. Each occupied up to that line until the fence was removed by the defendants in 1857. This was the plaintiff's case. The defendants proved that at the time the fifty acres was divided between Mosher and Owen, in 1815, it was divided as follows: "They cut a rod pole and measured off the land, and built the fence through, north and south, upon the line between them, as nigh as they could come at it; and at the same time they agreed that whenever they could get a surveyor they would have the land run out, and put the fence on the true line, as the surveyor should run it; that when they measured through they could not tell where the east line of the fifty acres was, and they guessed at it." The defendants also offered evidence tending to prove that those occupying the premises now owned by the plaintiff were from time to time told, by those owning the other half, that the line was unsettled, and that Pierson, the plaintiff, still got more than one half the fifty acres. The court charged the jury that if they were satisfied, from the testimony, that the line fence was established in 1815, and had been maintained down to 1857, the defendants were precluded, upon the principles of public policy, from setting up or insisting upon a line in opposition to one which had been steadily adhered to upon both sides for more than forty years. That if necessary, in order to establish this line, the law would presume a conveyance in accordance with it. This long acquiescence was proof of so conclusive a character that the defendants were precluded from offering any evidence to the contrary. That parol testimony to change a boundary line, after so long an acquiescence in its location, would counteract the beneficial effects of the statute of frauds, and render the title to real property alarmingly insecure. To which propositions

Pierson *v.* Mosher.

the counsel for the defendants excepted. The court further submitted to the jury the following questions, to wit: Was the line fence, put up in 1815, on the division of the fifty acre lot, kept up as thus erected, for more than forty years, and for that time was it acquiesced in by Mosher? And also charged the jury that if they found said question in the affirmative, they would find a verdict for the plaintiff. To which direction and charge the counsel for the defendants also excepted; and the counsel for the defendants requested the court to charge the jury as follows: 1st. That if they (the jury) should find, from the evidence, that the fence was originally put up under an agreement that it was to be altered at some future time, in case it should be found, upon actual survey, not to be upon the true line, then there was no adverse possession, as against Mosher, until such actual survey made, or notice given to him that the other party claimed the fence to be on the true line. But the court refused so to charge; and to that refusal the counsel for the defendants excepted. The said counsel further requested the court to charge said jury: 2d. That in order to evince acquiescence on the part of the defendant Mosher, there must be proof of some affirmative act in that respect on the part of Mosher. But the court refused so to charge; and to such refusal the counsel for the defendants also excepted.

The jury found a verdict in favor of the plaintiff; and the defendants, upon exceptions ordered to be heard in the first instance at a general term, moved for a new trial.

*Wright & Pomeroy,* for the appellants.

*N. T. Stephens,* for the plaintiff.

*By the Court,* T. R. STRONG, J. From the manner in which this case was submitted to the jury by the charge, the verdict must be deemed to establish that the line fence built in 1815, on the division of the fifty acre lot, was kept up and acquiesced in by Mosher, the owner of the east half, for more than

forty years. Now assuming that the fence was originally put up under an agreement that it was to be altered at some future time, in case it should be found, upon actual survey, not to be on the true line, that would not vary the law of the case. The agreement as such would have no force in reference to fixing the line; each party would have the same right to remove the fence, without as with the agreement; and the agreement could have no effect, except as evidence upon the question of acquiescence in the line as then adopted, and on which the fence was placed. The facts of the existence of the fence as a line, and the acquiescence in it as such for such a length of time being proved, notwithstanding the agreement, the law would determine the line of the fence to be the true line between the parties.

It is the long acquiescence which renders the practical location conclusive. In *Baldwin* v. *Brown*, (16 *N. Y. Rep.* 359,) the court say, " the acquiescence in such cases affords ground, not merely for an inference of fact, to go to the jury as evidence of an original parol agreement, but for a direct legal inference as to the true boundary line. It is held to be proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary. Unless the acquiescence has continued for a sufficient length of time to be thus conclusive, it is of no importance. The rule seems to have been adopted as a rule of repose, with a view to the quieting of titles; and rests upon the same reason as our statute, prohibiting the disturbance of an adverse possession which has continued for twenty years." In all cases in which practical locations have been confirmed upon evidence of this kind, the acquiescence has continued for a long period, rarely less than twenty years.

No error, therefore, was committed by the refusal to charge as requested; and the charge was fully warranted by the case cited.

The fact of the plaintiff having removed the fence on the south side of the fifty acres, to conform to the survey of the

south line made in 1857, had not, I think, any materiality in this case. It would not have tended to prove any thing as to the line between the east and the west half of the fifty acres, or on the question of acquiescence in the line, according to the fence.

It follows that a new trial should be denied.

[Monroe General Term, September 5, 1859. *T. R. Strong, Smith* and *Johnson,* Justices.]