PHILIP SMITH v. ABIJAH RICH.

*County Surveyor's Certificates in Evidence—Comp. L. §§ 587, 590—*
*—Presumption of proper Performance of Official Duty.*

County surveyor's certificates are not admissible in evidence of
the facts they contain, unless they contain the particulars
which the statute requires to be entered in the surveyor's
record. Comp. L. §§ 587, 590.

The burden of proof is upon one who disputes a line run by the
government surveyor.

Error to Ionia.    Submitted Oct. 18.    Decided Nov. 1.

TRESPASS.    The facts sufficiently appear in the opinion.

*Vosper Brothers* for plaintiff in error. It is presumed
that a government surveyor follows the requirements of the
law in running section lines. *Hamil v. Carr*, 21 Ohio St.,
271.

*W. O. Webster* for defendant in error.

COOLEY, C. J.    Rich sued Smith in an action of tres-
pass.    The real controversy between them concerns the
location of the quarter section post between sections twenty-
six and thirty-five in township eight north of range eight
west: Smith owning land on section thirty-five and Rich
land on section twenty-six which would be separated by the
line running from this quarter post to the corner of sections
26, 27, 34 and 35.

There seems to have been no controversy regarding the
actual location of the section corners by the government
surveyor, and Smith claimed that the quarter post between
sections 26 and 35 was located on a straight line between
the common corner post of these sections on the east and
the corresponding post on the west.    Rich, on the other
hand, claimed that the government surveyor actually located
the quarter post about seven rods south of the straight line
between the corners, and thereby fixed and determined the
actual boundaries.

The field notes of the government surveyor were put in evidence, and from these it appears that he first located the section corners, and then run a random line from the west corner post between the two sections, striking the east line one chain and thirty links south of the corner post, whereupon he retraced his steps and set the corner post on the true line. Few indications appear to be now discoverable that the surveyor actually run out and marked the line between sections thirty-five and twenty-six, but the random line is still traceable, and it would seem plain from this and from the field notes that if the surveyor actually located the quarter post south of the random line instead of north of it as he evidently meant, and as duty required him to do, it was through some gross and very inexcusable blunder.

DIAGRAM OF PREMISES IN SUIT.

ad The random line.   b Nicholson's quarter post.   abc The crooked section line.

The most important evidence given on behalf of Rich

consisted in three certificates of survey made by successive county surveyors, and which the jury on returning to their rooms were allowed to take with them. These certificates are given in the margin * in full, omitting the diagrams.

* Certificates of survey by successive county surveyors.
A. W. Nicholson, Co. S.
N. B. The bearing to the north boundary of this section to the quarter-post are noted B. oak; the're both white oak; one is standing all rite an' agree with the original; but the timber the one is fell over and drawn out one side, the roots were plane, the '¼ s' in the tree plane; so there is no mistake in establishing where the old stake stood. The mistake is undoubtedly; was done in correcting the wrong way; the post is in line bet. sections 35 and 26. A. W. N.

Thomas Cornell, County Surveyor, Ionia county, Mich.
Chain bearers, sworn, Albert Northway, Emond Ingalls.
Flagman, sworn, Charles Brown.
Axman, sworn, Reuben Anderson.
In surveying the section line between sections 26 and 35, in T. 8 N., of R. 8 W., I commenced at the corner of sections 26, 27, 34 and 35, from said corners I ran due east 79 chains and 19 links, and came out south 2 chains and 19½ links from the section corner of sections 25, 26, 35, and 36, true bearing from one corner to the other of the line between sections 26 and 35, is N. 87° 21′ E., and that line is north one chain and sixty-eight and ¾ links from the quarter stake as set by the United States Surveyor who established it. One of the original bearings is now standing, green and growing. The other tree had died while standing, the roots rotted off, and the tree fallen, leaving a hole or hollow in the ground where it stood; the roots of the tree were pretty sound, and in or immediately above one of the roots a part of the original ax-mark was plain to be seen. I cleaned out the hole or hollow where the tree had stood, and found the holes where the roots had entered the ground, and I placed the stump or old roots over the holes in the ground, and the holes and the roots corresponded exactly in position and size, so that there is no question but that the fallen tree is one of the original bearing trees to the quarter stake in dispute; the size of the tree and kind of timber, white O. 12 inches in diameter, and the bearing and distance of the hole in the ground from the stone now set where the stake had stood, as well as the bearing, and distance, and size of tree and kind of timber, of the present remaining bearing tree is positive proof to my mind of the stone now standing, is placed where the original quarter stake had stood. I found no trees, or appearance of where trees may have stood as bearing to the quarter stake if it had been placed over near the center of the right line running from corner to corner of these sections.
I made one new bearing to the ¼ stake as follows:—W. oak, 30 N. W. 93 links.

A. C. Smith, County Surveyor, Ionia Co.
In making the survey as represented by the plat, I run the line from the north-west corner of section 35 in T. 8 N., of Range 8 West to the north-east corner of said section, the true bearing from one corner to the other of the line between

As they were relied upon and received as statutory evidence in the court below, it becomes very important to see whether there is any such compliance with the statute, in the particulars covered by them, as would justify their being received at all.

The statutory provisions bearing on the case are the following sections of the Compiled Laws:

Sec. 587. "The certificate of the surveyor or his deputy, of any survey made by him of any lands in the county, shall be presumptive evidence of the facts therein contained, unless such surveyor or deputy shall be interested therein."

Sec. 590. "Each county surveyor shall record in a suitable book, to be provided by him at the expense of the

sections 26 and 35 is N. 88° 46′ E. and that line is north of the ¼ stake one chain and sixty-seven links, as set by the United States Surveyor.

One of the bearings to the quarter stake is gone, the other is green and growing. I took the bearings and distance from the standing tree to the stone set for the quarter stake and they agree with the field notes of the government surveyor's bearings to the standing tree: White oak 14 S. 50° W. 11 links. The other tree was white oak 12 N. 34° E. 30 links. I took the bearings and distance given by the government surveyor for that tree and found good indications at that point that a tree had grown there; there was a tree that had died while standing and had fallen and had been drawn a short distance from the quarter stake, which agrees in size and kind of timber with the tree described by the government surveyor. I examined the ground at and near where the quarter stake would have been set if it had been placed at or near the center, and on a line between sections 26 and 35 town 8 north, of range 8 west, and found no trees or appearances of where trees may have stood as bearings to the quarter stake. And on the 27th day of December, 1875, I made another examination at the same place as stated above and was shown a white oak stump by Philip Smith, which had the appearance that it had been burned off a little below the surface of the ground, and should think the tree when growing was twelve or fourteen inches in diameter. I also found a stake set north east of the above mentioned stump, and I took the bearings and distance from the stake found to said stump, S. 50° W. 11¼ links; the stake found was 5 links north of the right line from corner to corner between sections 26 and 35 T. 8 N., of 8 W. And on the 30th day of December, 1875, I dug around the above mentioned stump and removed it from the place ——where found it, and did not find any appearances or indications whatever that a tree had grown there.

And on the 11th day of January, 1876, I run a line south 89° 30′ west 39 chains and 74 links, from a point 65 links south of where the north quarter stake of section 35 T. 8 N. of R. 8 W. would have been placed by the United States Surveyor in line equi-distant between sections 26 and 35 and on and near that there was trees marked which had the appearance that they were marked for line trees.

county, all surveys made by him and his deputies, except such as are made for a temporary purpose, and surveys of township highways and village plats. The record book shall be constituted so as to have the left page for diagrams, to be numbered progressively, and the right page for notes and remarks; and no diagram shall be constructed to scale less than one inch to twenty chains. The courses and distances of all lines run, and the number of acres contained in each piece of land surveyed, shall be entered on the diagram of a section, subdivided according to the survey thereof, and shall be considered a part of the record. The record shall show, in addition, the time when, the name of the person by whom, and the person for whom, each survey was made, a description of all witness trees marked on the survey, with their respective courses and distances, and the variation of the magnetic from the true meridian. He shall make an index to such record book, referring in some suitable manner to each survey."

Although the section first recited does not point out the particulars to be embraced in the certificates which may be evidence under it, the clear intent, as we think, is that the certificate shall embrace every thing required in the record provided for in section 590: in other words, the record is only a record of the facts which appear with equal fulness in the certificate. The particulars are required as essential to give either the certificate or the record any real value, and to make them worthy of reliance for any purpose.

Looking at these certificates it is apparent at a glance that none of them complies with the statute, or was admissible under it. Neither of them appears to be a survey of any piece of land, but all of them, apparently, have for their object the location of the quarter post now in dispute. None of them shows for whom the survey was made, or the variation of the magnetic needle from the true meridian. Nicholson's is utterly bare of any of the particulars required by the statute, except that upon the diagram attached to it the time when it was made is entered. As no such papers could have been evidence at the common law, we need not go beyond pointing out these particulars to show the error of the circuit court in receiving them.

This error will render necessary a new trial, and we shall not review all the rulings of the trial court, many of which

.were upon points in respect to which considerable latitude must be allowed to the discretion of the court. One other error, however, was too important to be overlooked. The defendant requested that the jury be instructed that if they should find that the line between sections twenty-six and thirty-five was actually run by the government surveyor, then, inasmuch as the plaintiff claims that it was not a direct line, the burden of proof is upon him to show the fact. This was refused. The instruction requested was in substance this: that a party who claimed that the surveyor had not performed his duty, or had blundered in performing it, must take upon himself the burden of showing that fact. That is only reasonable, and is in accord with the general rule of presumptions.

The judgment must be reversed, with costs, and a new trial ordered.

CAMPBELL and GRAVES, JJ., concurred.

MARSTON, J., did not sit in this case.