122    70
127   195
122    70
s80ᴺᵂ 987
122    70
142   658

CITY OF ST. JOSEPH *v.* SEEL.

ADVERSE POSSESSION—LICENSEE.
   The possession of one who enters upon land under license from another claiming title, and who occupies the land for a series of years, doing nothing inconsistent with his holding as licensee, does not begin to be adverse until he notifies the licensor of a hostile claim.

Error to Berrien; Coolidge, J. Submitted October 6, 1899. Decided December 2, 1899.

Ejectment by the city of St. Joseph against Henry Seel and others, trustees of the First German Baptist Church of St. Joseph. From a judgment for defendants, plaintiff brings error. Reversed.

*O'Hara & O'Hara*, for appellant.

*Lawrence C. Fyfe* and *N. A. Hamilton*, for appellees.

LONG, J.   Action of ejectment.   Defendants, as trustees, are in possession of the land in controversy.   This land, known as " Lot 383," is a part of a plat made by the proprietors of the town of Newberryport, and duly recorded, and situate within what is now known as the " City of St. Joseph."   The proprietors of the land platted, in 1834, gave a deed of it, with other lands, to the president, trustees, and freemen of the village.   It was called in the plat "Academy Lot."   It appears that the village of St. Joseph deeded to the defendant society lot 384, which was shown on the plat as " Church Lot."   This deed was made in 1860.   The defendant society at once erected a church building thereon.   Lot 383 remained vacant until some time in 1873, when a man by the name of Lessing moved upon it, but by what authority does not appear.   He had a small house there, but it is not shown that he claimed title.   In the spring of 1881 the defendant society was desirous of building a brick church upon lot 384, to which it had title.   The society thereupon moved the old church —a frame building—upon lot 383, the title to which is in controversy here.   Some arrangement was made with Lessing by which he vacated the lot, and his house was moved off when the old church was moved on.   The defendant society claims to have been in open, hostile, and adverse possession of the property since that time.   The facts upon this branch of the case are not much in dispute.

The only title which the plaintiff showed was the plat, and the deed to the village of St. Joseph.   It was not shown that the village or city of St. Joseph was ever in possession.   The court stated to the jury that the plaintiff had not shown title, or that it had ever had possession of the land.   Counsel for plaintiff claimed, however, that the defendant society went into possession in 1881, under a license from the city, and that, therefore, it was in no position to set up a claim of title adverse to the city.   The court charged the jury as follows :

" The plaintiff in this case has not shown any title to this land by record or possession.   The evidence on the

part of the plaintiff in this respect has failed; that is, the plaintiff has not shown what we call title either by possession or by record. It is claimed, however, by the plaintiff, that in April, 1881, the defendants sought permission of the city to occupy the premises for temporary purposes; that they obtained such permission of the council, and thereupon entered upon the premises under the leave and license of the council, and recognizing the title of the plaintiff in the premises. If this theory be true, then the possession of the defendants, the church, so obtained, would not be adverse, and no title would be acquired by the defendants so long as that kind of occupation continued; and, if that kind of occupation continued into a period of within less than 15 years before the commencement of suit, then the plaintiff can recover. The defendants in this case, however, claim that they have held adverse possession of these premises for more than 15 years before the commencement of this suit. Suit was commenced September 9, 1898. A person is said to be in adverse possession of a piece of land when he occupies a piece of land claiming to own it. If such possession is continuous, open, exclusive, notorious, and hostile, then such possession ripens into a complete title, as good as any other title, at the expiration of 15 years. No deed is necessary, or any written title or paper of any kind, to base adverse possession upon. Naked possession alone, without any deed or paper of any kind, is sufficient to base adverse possession upon, if the party claims the land to be his own, and such occupancy continues for 15 years openly, exclusively, and in a hostile way. This law, gentlemen of the jury, is a wise one.   *   *   *

" It is immaterial, also, whether possession was originally acquired by permission or not, if at some time after entry the party claimed the land, and occupied it continuously, openly, and exclusively, and in a hostile way, asserting ownership, and so occupied it for 15 years. If, however, the party entering enters under a license, or by permission of another party, and does not claim to own it, but occupies it subordinate to the party permitting him to occupy it, and under certain conditions, then there can be no adverse possession so long as that condition of things exists. That is to say, if the party goes in under some license, and recognizing the title of the party that lets him in, no adverse possession can exist so long as that condition of things exists. If permission is given to enter upon

the land, and the party enters upon the land, claiming it as his own, then adverse possession may begin. The defendants in this case claim that upon their entry upon this lot, or shortly after, they actually claimed to own the land, and made improvements, and have openly, notoriously, and exclusively been in possession of these premises, claiming them to be their own. If these facts be true, the plaintiff is not entitled to recover. Mr. Benning and some other witnesses testify in this case on the part of the defendants that, after the church took possession of the premises, the church claimed to own them, and used them continuously and openly, and have had exclusive possession of these premises for more than 15 years prior to the commencement of the suit. If these witnesses testify to the truth, then the plaintiff cannot recover. It is for you to say whether they testify to the truth or not. If you do not believe these witnesses, if you believe the church went upon the land under a license of the city council, recognizing the ownership of the city, with no idea of claiming to own it themselves, then the possession of the church would not ripen into a title so long as that kind of occupancy continued. There would be no adverse possession under that state of facts. But if the church entered upon the lot with the idea that the city had no use for the lot, and had no objection to the occupancy by the church, and took advantage of the permission of the council to occupy it under a claim of ownership, then, although the church may have been mistaken, and although the council may not have intended to give the land to the church, such occupancy would be the basis of adverse possession. The real question before you is, What was the real character of the possession by the church? Have they occupied it under the idea and claim that they owned the land, that it was theirs, for 15 years prior to the commencement of this suit, or is their claim in this respect fraudulent and untrue? This is the square issue before you. It is for you to determine. The whole facts are before you, and the responsibility, so far as the facts are concerned, devolves upon you entirely. I have endeavored to give you the law as I believe it to be. I don't think there is any particular controversy among the attorneys as to the law that governs the case."

The jury returned a verdict in favor of defendants. Plaintiff brings error.

Counsel excepted to the refusal of the court to give the requests asked and to the charge as given. Counsel for plaintiff asked the court to charge the jury that:

"If you find that the trustees of the First German Baptist Church recognized that the plaintiff was the owner of the lot in question in the spring of 1881, and requested permission of the council of St. Joseph to remove their old church building upon this lot for temporary purposes, and that such permission was granted by the council, and that, acting under that permission solely, the church people moved upon said lot, then I charge you that plaintiff is entitled to recover."

This was refused, except given modified in the general charge.

Counsel also asked the court to charge:

"It matters not what may have been in the minds of the church people, if they did obtain permission from the council, before their possession would commence to be adverse, they must notify the landlord of such hostility before adverse possession can commence."

The court, in refusing this request, stated to the jury:

"I don't understand it is necessary in cases of this kind that any written notice must be given to the party that gave the permission. The adverse possession may be shown by proof of facts, notorious possession, exclusive, making improvements, and all those things. It is not necessary to prove any direct verbal notice. Still it is necessary that the defendants shall show by a preponderance of evidence that there were acts—notorious acts—indicating a claim of ownership, and under such circumstances that the city would reasonably be expected to take notice of it."

1. It is contended that the court did not give the jury proper instruction upon the question of what would constitute adverse possession which would ripen into title. We need not consider that question, as we think the requests to charge should have been given.

2. It is contended that the court erred in not giving the requests to charge, and that the second request, given above, stated the law correctly; that, if the defendants

did obtain permission from the city to move onto the land, they could not be treated as holding it adversely until they had notified the city that they intended to hold in hostility to it.   There was testimony given by plaintiff tending to show that the trustees of the defendant church society, or some of them, in 1881 appeared before the council, and asked permission to move the old church on the lot in question.   Two of the trustees of the church society were at that time members of the board of trustees of the village.   These two trustees both testified that, as soon as the old church was moved on the lot, the church society claimed to own it; but they admitted that nothing was said to the other trustees of the village about the claim then made.   There is no evidence in the case that the trustees of the village were notified that the church society claimed to own the property. . It appears that, after this license to occupy the lot was granted by the village officers, the building was moved upon it, and put upon brick piers; the lot was filled by hauling in earth, and a sidewalk built in front of the property; trees were planted, and the old church occupied.   During two years the church society rented the property to the board of education at an annual rental of $200.   While it appears that the members of the society talked among themselves that they did not recognize that the city had any interest in the lot, yet it is not claimed that they ever told any one outside of the society that they made such claim of ownership.   Here, then, is shown an entry upon the property by the defendants under a license from the city, the city then claiming title under a deed from the platters.   There is nothing in the record showing that the acts done by the defendants were any different from what might be expected from a mere licensee.   The church society paid no rental, and, naturally, what improvements were made it made itself. It moved its building upon the lot.   The lot was low, and it filled it up.   It planted trees, and built the sidewalk. It continued in possession from 1881 to 1898, when this suit was commenced; and during all that time, if the testi-

mony of the two trustees is to be believed, they intended to claim title for the society, and yet said nothing to the village officers about it, although these two trustees were members of the village board at the time the license was granted. We think it is the settled rule of law that, if possession of real estate is held by mere indulgence or by consent of the owner, and the person so going into possession understands this, the possession is not adverse, and cannot ripen into a title which will defeat the right of the legal owner. This doctrine is fully stated in *Larwell* v. *Stevens*, 2 McCrary, 311, 12 Fed. 559. See, also, *Main Township School District* v. *Reichard*, 142 Pa. St. 226. It was said in *Smith* v. *Hitchcock*, 38 Neb. 109:

"There is no evidence in the record that establishes or tends to establish the fact that Mrs. Smith's possession was an adverse one, nor that she entered into possession of these premises with the intention of claiming them as her own, nor that she ever held, after entry, in hostility to the defendant in error. Mrs. Smith's entry on this lot was by permission of the owner of the legal title, and her possession thereafter was permissive, and not adverse; nor could it become so until such time as she began to occupy under a claim of right, with notice of such claim brought home to the owner,"— citing in support of that doctrine: *Harvey* v. *Tyler*, 2 Wall. 328; *Allen* v. *Allen*, 58 Wis. 202, 209; *Perkins* v. *Nugent*, 45 Mich. 156; *Davenport* v. *Sebring*, 52 Iowa, 364; *Pease* v. *Lawson*, 33 Mo. 35; *Smith* v. *Stevens*, 82 Ill. 554.

In the present case there was no claim that any notice was ever given the city that the defendants set up any such claim, or intended to claim title, and that they held possession in hostility to the city. The court should have given the requests tendered by the plaintiff.

We need not discuss the other assignments of error. The judgment below must be reversed, and a new trial ordered.

The other Justices concurred.