MILLER v. SHUMWAY.

1. EJECTMENT—LINE FENCE—SURVEYOR'S MONUMENTS.

In ejectment to recover a strip of land separated from land of plaintiff by a line fence, a surveyor testified that he ascertained that the fence stood several feet on plaintiff's land by measuring from a stone at the northeast corner of the section. Defendant moved to strike out the testimony, on the ground that there was no evidence that this was a proper starting point. *Held*, that the fact that the stone stood very near the center of two highways, and was properly situated with reference to a re-established quarter-section post, furnished evidence of its proper location, although not set at the time the original survey was made.

2. WITNESSES—SURVEYORS—REFRESHING MEMORY—INDEPENDENT TESTIMONY.

The use by a surveyor of a copy of his minutes of survey, instead of the original, to refresh his recollection in giving testimony, is not ground for reversal, where it appears that, on direct examination, he testified independently of the copy.

3. SURVEYS—EVIDENCE—DISPUTED BOUNDARY.

Where, in a controversy over the location of a boundary line, it may fairly be inferred from the testimony of a surveyor that a correct measurement was made from the starting point, it affords evidence of the proper location of the line, even though the surveyor did not observe all the requirements of law in making his survey.

4. ADVERSE POSSESSION—EVIDENCE—HARMLESS ERROR.

Where defendant in ejectment claimed title by adverse possession, and offered testimony in support of his possession, which was afterwards, on plaintiff's motion, stricken out, *held*, that the ruling, if improper, was not reversible error, as all the testimony tended to show, and the court charged the jury, that defendant was in possession for more than 15 years before commencement of suit.

5. TRIAL—INCOMPETENT EVIDENCE—WAIVER OF ERROR.

Where incompetent testimony was offered by plaintiff, and seasonably objected to as such, which provoked interlocutory discussion, from which it appeared that a similar class of testimony had been received on behalf of defendant; and dur-

ing the discussion defendant's counsel, addressing the trial judge, remarked, in substance, "If you were right in admitting our testimony, you should admit this testimony,"—*held,* that defendant could not justly complain of the ruling of the court admitting the testimony.

6. ADVERSE POSSESSION—EVIDENCE—NEIGHBORHOOD REPUTATION.
   Where, under defendant's claim of title by adverse possession, the controversy hinged on the hostility, and not the distinctness and notoriety, of his possession, it did not operate to his prejudice to exclude testimony that it was generally understood in the neighborhood that he owned the land in question. *Sparrow* v. *Hovey,* 44 Mich. 63, distinguished.

7. WITNESSES — MATTERS WITHIN KNOWLEDGE OF DECEDENT — BOUNDARY-LINE AGREEMENT.
   Where, in ejectment, it appeared that a line fence, over the proper location of which the controversy turned, was built under some arrangement between defendant and plaintiff's remote grantor, since deceased, and plaintiff claimed the agreement to have been that, if it should afterwards be found that the fence was not on the true line, it should be changed to conform thereto, *held,* that since, under 3 Comp. Laws, § 10212, defendant could not testify to the arrangement, evidence as to his intent with reference to changing the fence, at the time of its erection or subsequently, was properly excluded.

8. ADVERSE POSSESSION—EVIDENCE—QUESTION FOR JURY.
   Where defendant in ejectment asserted title by adverse possession, and there was testimony indicating that plaintiff's grantor knew, more than 15 years before commencement of suit, that defendant was holding the land in controversy in hostility to his claim, but there was also testimony of admissions by defendant that he had not occupied the land adversely to plaintiff sufficiently long to make it his own, the issue was correctly submitted to the jury, as it was competent for them to find that the occupancy by defendant was not of a hostile character for the statutory period.

9. TRIAL—INSTRUCTIONS—REQUESTS.
   The failure of the trial judge to instruct the jury upon some particular matter involved in the issue is not error, in the absence of a request for such instruction.

Error to Clinton; Stone, J. Submitted January 14, 1904. (Docket No. 41.) Decided February 16, 1904.

Ejectment by John Peter Miller against David H.
Shumway. From a judgment for plaintiff, defendant
brings error. Affirmed.

*Chaddock & Scully (Dooling & Kelley, of counsel),*
for appellant.

*John G. Patterson* and *Lyon & Moinet,* for appellee.

Carpenter, J. Plaintiff owns the east half of the
west half of the northeast quarter of section 18, in the
township of Dallas, Clinton county. Defendant owns
the land adjoining him on the east. The boundary line
which separates their land is disputed. Plaintiff brings
this ejectment suit to recover the possession of a strip of
land about nine feet in width. The disputed strip is sep-
arated from the land occupied by plaintiff by a line fence
built about 30 years ago, and has been in defendant's pos-
session since that time. The testimony of the plaintiff
tends to prove that this fence is not on the true line; that
it was erected under an arrangement that at some future
time the true line would be ascertained by a survey, and
the fence placed thereon. Defendant claims that the
fence was on the true line, and that, if not, he had acquired
title by adverse possession. The issue was submitted
to the jury, who found for the plaintiff. We are asked to
reverse the judgment of the court below on numerous
grounds, which will be stated and discussed.

It is contended that the court erred in not striking out
the testimony of Charles Eddy, a surveyor, who testified
on the part of the plaintiff that he ascertained that the
fence in question stood several feet over on plaintiff's land
by measuring from a stone located at the northeast corner
of the section. It is claimed that there was no testimony
tending to show that this was a proper starting point. To
this we cannot agree. While it is quite clear that the
stone was not set at the time the original survey was
made, the fact that it stands very near, if not at, the center
of two highways, and the fact that it is properly situated

with reference to a re-established quarter-section post, furnished evidence of its proper location.

Complaint is made because this witness was permitted to use a copy of the minutes of his survey instead of the original, which had been turned over to the county surveyor, to refresh his recollection. We cannot say that defendant was prejudiced by this ruling. It is fairly to be inferred from the record that the witness did not, on direct examination, testify to anything which he did not remember independently of this copy.

Complaint is also made because the witness was permitted to testify about a former survey in which he took no part. Such testimony was brought out on the cross-examination of the witness, and this complaint is based on no assignment of error.

It is also urged that the testimony of witness Eddy should have been stricken out because in making his survey of the disputed strip he failed to observe all the requirements of law. We think it may fairly be inferred from the testimony of this witness that a correct measurement was made from the starting point; and, if it was, it afforded evidence of the proper location of the disputed line, even though he did not observe all the requirements of law in making his survey.

It is claimed that the court erred in striking from the record the testimony of John W. Shumway, defendant's father and grantor, respecting the building and repairing of the fence in question and occupancy in relation thereto. The fence in question was built, and presumably maintained, under an arrangement made with plaintiff's deceased grantor. Most of the testimony stricken out was therefore inadmissible under section 10212, 3 Comp. Laws. Defendant claims, however, that the statute does not extend to testimony respecting matters of public notoriety, such as the occupation of land. See *Wright* v. *Wilson*, 17 Mich., at pages 200, 201; *Chambers* v. *Hill*, 34 Mich. 523. Assuming this claim to be well grounded, the trial court erred in striking out that part of the witness' testimony.

But we do not think this error—if error it was—was prejudicial to defendant. The testimony in the case all tended to prove, and the court in submitting the matter to the jury charged, that defendant was in possession of this strip of land for more than 15 years before the commencement of this suit.

Plaintiff was permitted to prove declarations by his grantor asserting his ownership of the disputed strip, and that he signed a petition for a resurvey. We do not think this evidence was admissible, but we do not think that defendant properly objected to its admissibility. When it was offered, defendant's counsel objected to it as incompetent and immaterial. Plaintiff's counsel replied, "It is as competent to show what Green said as to show what Shumway said." (Defendant, Shumway, had been permitted, notwithstanding plaintiff's objections, to prove declarations of ownership of the disputed strip, made by him, not in the presence of plaintiff or of plaintiff's grantor.) Thereupon the court admitted the testimony. Later the court asked counsel for defendant, "Do you claim the statements of Andrew Green are incompetent?" to which counsel replied: "I am not so certain what the rule is. My brother objected to testimony on the same line. I thought I would save an objection;" and thereupon further testimony of like character was admitted. It will thus be seen that the court, in admitting this testimony, had a right to act, and did act, upon the assumption that, if the evidence already introduced on the part of defendant was admissible, then the evidence under consideration was. Defendant's counsel said, in substance, to the trial judge, "If you were right in admitting our testimony, you should admit this testimony." Under these circumstances, there was nothing for a fair-minded judge to do but to admit the testimony.

Complaint is made because the court did not permit defendant to prove that it was generally understood in the neighborhood that he owned the land in controversy. It is claimed that this testimony was competent upon the

issue of adverse possession. In *Sparrow* v. *Hovey*, 44 Mich., at page 64 (6 N. W. 93), defendant was permitted "to prove that the land was generally understood to be and called his in the neighborhood," on the ground that it "tended to establish the notoriety of defendant's possession and claim of title, which were important facts in his defense." In that case "the distinctness and notoriety of defendant's possession were the very things in controversy." That case has been followed by the similar case of *Whitaker* v. *Shooting Club*, 102 Mich. 454 (60 N. W. 983). In the case at bar, however, there is no controversy about the distinctness and notoriety of defendant's possession. His possession is conceded to be distinct and notorious. Its hostility is denied. The general neighborhood understanding of defendant's ownership would be justified by his possession, and would have little, if any, tendency to prove the notoriety of a hostile claim asserted by him. If there was any error in excluding this testimony, we cannot think that it was prejudicial to defendant.

Defendant was not permitted to answer these questions: "At the time you put the fence there, was there any intent on your part ever to change it?" "Have you, at any time since this fence was built, intended to change this fence?" It is contended that, as bearing on the question of defendant's adverse possession, he had a right to show his intent. See *Pugh* v. *Schindler*, 127 Mich. 191 (86 N. W. 515). The line fence referred to was built under some arrangement between defendant and plaintiff's remote grantor, since deceased. As heretofore stated, plaintiff claims that that arrangement was to remove it to the true line when ascertained. Defendant denies this. As defendant could not, concededly, under the statute (section 10212, 3 Comp. Laws), testify to the arrangement, I do not think he could testify to his intent at the time. Such testimony would be an evasion of the statute. Neither do I think he could testify to his subsequent intent. If the subsequent intent is the same as the intent with which the fence was erected, it is subject to the same objection as

testimony respecting that intent. If it is a different intent, it has no bearing on the controversy, unless known to plaintiff or to his grantors. See *Pugh* v. *Schindler*, 127 Mich. 191 (86 N. W. 515).

It is urged that the court erred in not directing a verdict for the defendant. There is testimony which indicates that, as early as 1885, plaintiff's grantor, Green, knew that defendant was holding the land in controversy in hostility to his claim. If this were the only testimony bearing upon the subject, we think that defendant would have been entitled to a verdict. See *Pugh* v. *Schindler*, 127 Mich. 191 (86 N. W. 515). But there was testimony of admissions by defendant that, when the suit was commenced, he had not occupied the land adversely to plaintiff sufficiently long to make it his. From this testimony the jury might have inferred that defendant had not held under a hostile claim for the statutory period. The issue was therefore properly submitted to the jury.

Complaint is also made because the court did not charge the jury that, if plaintiff's grantor, Green, knew as early as 1885 that defendant asserted a hostile claim to the land in controversy, he was entitled to a verdict. It is a complete answer to this complaint to say that no such charge was requested, and we cannot say that it was error for the court to fail to cover the point.

We do not think that defendant's brief points out any reversible error. The judgment of the court below is therefore affirmed.

The other Justices concurred.