# Trufant *et al. v.* White & Co.

*Statutory Action of Ejectment.*

1. *Adverse possession.*—Possession of land from 1851 to 1868, the holder exercising acts of ownership incident to adverse holding, can not be declared, as matter of law, to have been adverse possession, if such holder, in 1868, made admissions tending to show that his possession had been in recognition of a paramount title, and permissive under it; the character of such possession being a question determinable only by a jury.

2. *Same; permissive possession under admitted paramount title for ten years.*—If, after adverse possession has ripened into a title, the holder thereof admits that his possession is in recognition of a paramount title, and after such admission he continues in possession permissively under this confessed paramount title for ten years, the title

[Trufant et al. v. White & Co.]

to said land thereby becomes divested out of him, and revested in the admitted owner.

3. *Adverse possession after admitted permissive possession.*—If one, who has been in possession of real estate for many years, admits that such holding was in recognition of, and permissive under, a paramount title in another, his possession subsequent to such admission can not become adverse, without an open and distinct disavowal of the title of the admitted owner, and the assertion of a hostile title, involving a repudiation of the subordinate character of his former possession, brought to the actual knowledge of the true owner.

4. *Evidence; payment of taxes.*—In determining whether the possession of certain lands by one, who admits a former permissive holding, has become adverse. evidence showing payment of taxes on said lands by said holder. and that he scheduled the said lands in a bankruptcy proceedings by him, is competent as tending to show the character of his subsequent possession

5. *Argumentative charges.*—While argumentative charges should not be given by a court, the giving of them is not a reversible error.

APPEAL from the District Court of Lauderdale.
Tried before the Hon. W. P. CHITWOOD.

This was a statutory action of ejectment brought by the appellants against the appellees; and sought to recover lot No. 215 in the town of Florence, Alabama.

The plaintiffs sue as heirs of J. J Hanna, deceased, and the defendants constitute the firm of J. B. White & Co. The plaintiffs rest their claim to the property sued for upon the following chain of title, which was shown by the bill of exceptions:

In the year 1824 there was granted unto L. Pope and several, others as trustees of the Cypress Land Co., a patent from the United States Government for the fractional section 14 in Township 3, of Range 11, West, a part of which was lot 215 now sued for.   Upon the organization of the Cypress Land Company these trustees transferred to said Company, together with other property, the patent to fractional section 14.   By the articles of association it was provided that the property should be divided into lots, streets, alleys &c, and that agents and attorneys should be appointed to sell and convey by deeds to the purchasers of said lots from the Cypress Land Company.   Purporting to act under a power of attorney granted by the association, James Irvine and Peter Anderson sold and transferred unto Sarah Hanna and Thomas Childress lots 214 and 215, as laid down in the map of the town of Florence.   Thomas Childress and Sarah Hanna conveyed the lots 214 and 215 to James J. Hanna by deed duly executed and dated December 12, 1833.   Said James J. Hanna remained in possesion of the

same up to the time of his death, which occurred in Jan. 1867. The plaintiffs are his heirs, and now claim in that capacity.

The plaintiffs introduced evidence tending to show that Thos. Childress had had possession of the lots sued for during his life time until he conveyed the same to J. J. Hanna. The plaintiffs also introduced in evidence the deposition of Mrs. Mary Hanna, who was the wife of Alex J. Hanna, son of James J. Hanna. In her deposition Mrs. Mary Hanna testified as to certain letters which she had found amongst her husband's papers. These letters were addressed to Alex J. Hanna, and were written by John W. McAlester, from whom the defendants derive their title. These letters were attached as exhibits to Mrs. Hanna's deposition, and showed that John W. McAlester had control of said lands as the agent of J. J. Hanna, and recognized the right and title of his heirs to the same. In one of his letters, dated April 3, 1863, John W. McAlester stated, "I have two lots under fence which your father, when last here, informed me, belonged to him. I think he told me they belonged originally to his mother. They are like most other lots in the place—of but little value. I am willing to give for them what they are worth." In response to a letter written by A. J. Hanna in answer to the above letter of J. W. McAlester, in May, 1868, McAlester again referred to the said lands as belonging to A. J. Hanna's father, and said that, not having found them among the deeds of his father, he would examine the records for the same. On July 17, 1868, A. J. Hanna received another letter from McAlester in which he again acknowledged J. J. Hanna's title to the property. Plaintiffs introduced evidence tending to show that during his life time John W. McAlester had never renounced to any of them or disclaimed their title to said land, or had ever given them any notice of any adverse claim of possession on his part to said lot. It was also further shown that neither of the plaintiffs knew any thing about the lands in controversy until the letters of McAlester were found among A. J. Hanna's papers just before the suit, and that suit was brought immediately on finding the letters. The record shows that the present suit was instituted on May 3, 1888.

The defendants, as is stated above, traced their title from John W. McAlester, and they introduced in evidence a deed from John W. McAlester to Kate W. McFarland, dated March 1, 1879, in which McAlester conveyed, among several other lots, the one here sued for. The defendants then offered in evidence a deed from Mrs. Kate McFarland and

[Trufant et al v. White & Co.]

her husband to them, conveying the land here sued for.
This deed was dated Feb. 15, 1887. The defendants offered
in evidence a petition of McAlester and Irvine, a firm com-
posed of John W. McAlester and James B. Irvine as part-
ners, and of the individual members of said firm, praying to
be adjudged voluntary bankrupts. In a schedule attached
to this petition in which petitioners claim property exempt
to them, there was lot No. 215, the lot in controversy,
scheduled as the property of J. W. McAlester. This peti-
tion and schedule were filed in March, 1877. In neither
said petition nor in said amended schedules was the name of
any of the parties to this suit mentioned, reported as a
creditor or referred to in any manner. The plaintiffs ob-
jected to the introduction of said petition and schedules in
evidence upon the grounds, "that none of the plaintiffs being
parties to said proceedings in any manner, they could not
be bound by said proceedings, or any matter or thing con-
nected with or growing out of the same; that it being shown
by the testimony that said McAlester had acknowledged
the title of plaintiffs, and those through whom they claimed,
and admitted that he held said lot in subordination to said
title, his possession of said lot could not become adverse to
plaintiffs without notice brought home to them, that he re-
nounced and repudiated their title, and that said bankrupt
proceedings offered in evidence constituted no notice of such
renunciation by him; and that such evidence so offered was
irrelevant to any issue in this cause." The court overruled
these objections, allowed the same to be introduced in evi-
dence, and the plaintiffs duly excepted.

The defendants then offered in evidence, against the similar
objections and exceptions of plaintiffs, a certified transcript
from the District Court of the United States for the North-
ern District of Alabama which showed that McAlester and
Irvine, as a firm and as individuals, were adjudged vol-
untary bankrupts, and that there was allowed McAlester,
among other exempt property lot No. 215. The defendants
then offered in evidence the State and County tax books of
Lauderdale county from the years of 1869 to 1879 showing
that, with the exception of the years 1875, 1876 and 1877,
when said lots were not assessed to him or any one else, John
W. McAlester had given in for taxes in his own name sev-
eral lots in the town of Florence, among which was lot No.
215. The plaintiffs objected to the introduction of said tax
books in evidence upon the grounds, "that the same were ir-
relevant to any issue in this cause and illegal; and that it
being shown by the evidence that said John W. McAlester

34

[Trufant et al. v. White & Co.]

had recognized and acknowledged the title of the plaintiffs and those through whom they claim said lot, and admitted that he held said lot in subordination to their said title, his possession of said lot could not become adverse to plaintiffs without notice brought home to them, that he renounced and repudiated their said title, and that such assessment of taxes by him constituted no notice of such adverse holding or of said renunciation by him; and that it was incompetent to show by said assessments of lots to said McAlester, in his own name or by the assessments of other lots to. him, in his own name as trustee or agent, ·that he held or claimed to hold the lots in this suit adversely or in hostilily to the title of plaintiffs." The court overruled said objection, admitted said evidence "alone to show the character of John W. McAlester's possession, and for no other purpose and so instructed the jury." The plaintiffs thereupon duly excepted to his ruling of the court. The defendant introduced, against the similar objection and exception of the plaintiffs, the testimony of the tax collector of Florence, to the effect that the municipal tax books of the city of Florence for the years of 1861 to 1881 were lost, but that with the exception of the years 1875, 1876 and 1877, when said lots were not assessed to him, John W. McAlester had given in for taxes in his own name several lots in the town of Florence, among which was lot No. 215 here sued for. The defendants introduced several witnesses whose testimony tended to show that John W. McAlester had had possession of the lot in-·volved in this suit from as far back as 1851 up to the time he sold it to Mrs. Kate McFarland, and that he had cultivated it, raising vegetables thereon, and had used it as his garden; that it was inclosed from 1861 to 1869; that he had offered to sell it to some of the witnesses; that he spoke of the lot as his and acted with respect to it as he did to lots which he owned. These witnesses further testified that he claimed this lot as his, but did not state how he claimed or held it; that his possession, after the month of July, 1868, was just the same in character as it had been previous to that time. The plaintiffs moved to exclude the testimony of these witnesses in relation to the possession of said lot by McAlester, and the fact that he claimed the same as his own, upon the same grounds assigned to former motions; and duly excepted to the court overruling their motion.

At the request of the defendant, the court gave the following charges, to the giving of each of which the plaintiffs separately excepted : (2.) "If the jury believe from the evidence that any time before the commencement of this

[Trufant et al. v. White & Co.]

suit, John W. McAlester was in open, notorious, and continuous possession of the lot in controversy for ten years, claiming the same as his own, and that his possession was transferred to Kate W. McFarland, and her possession was transferred to defendants, then the defendants have established the defense of adverse possession of ten years, and are entitled to a verdict." (3.) "If the jury believe from the evidence that the possession of John W. McAlester was transferred to Kate W. McFarland, and that her possession was transferred to defendants, then the said successive possessions may be counted together in computing the time, and if the jury find from the evidence, that at any time, said successive possessions together were open, notorious, adverse and continuous for ten years, claiming the lot as their own, then the defendants are entitled to a verdict." (4.) "To constitute adverse possession it is not necessary that the party to be affected thereby should have actual notice of the same." (5.) "A non-resident is affected by the adverse possession of his land in this State to the same extent as a resident, and the same facts which would carry home to a resident notice of such adverse possession, would carry such notice home to a non-resident." (6.) "The statute of limitations is a statute of repose, and should be upheld and enforced by the courts and juries with a steady hand." (7.) "Statutes of limitations are enacted in the interest of repose; their remedial provisions are never construed narrowly; they rest on the presumption that meritorious [claims (?)] are not allowed to slumber until human testimony is lost or human memory fails. I charge you, therefore, that they should be upheld with a steady hand." (11.) "If the jury believe from the evidence that John W. McAlester was in the open, notorious and continuous adverse possession of the land sued for more than ten years after the letter of July 7, 1868, was received by Alex. J. Hanna, and before the bringing of this suit, claiming said land as his own, then I charge you, that the plaintiffs' right of action is barred, and your verdict must be for the defendant." (12.) "If the jury believe from the evidence that McAlester held open, notorious and continuous adverse possession of the lot in controversy, claiming the same as his own from 1852 till 1868, then the title of defendants had become perfect by the continuance of the adverse possession." (15.) "If the jury find from the evidence that the letters of John W. McAlester to Alex Hanna, referred to 'two lots on the opposite corner towards the river,' and that the lot in controversy (lot 215) was not

[Trufant et al. v. White & Co.]

on the opposite corner towards the river, but was on Court street, beyond Limestone street, and that lots 214 and 216 were nearer to McAlester's residence than it, they have a right to take these facts into consideration in determining which lots McAlester referred to."

There was judgment for the defendant, and the plaintiffs bring this appeal, and assign as error the various rulings of the lower court, to which exceptions were reserved.

EMMETT O'NEAL and ROULHAC & NATHAN, for appellants.— If the possession of McAlester, the grantor of defendant's vendor, was permissive, his possession could not become adverse until said McAlester asserted a hostile ownership in himself and repudiated the paramount title of the plaintiffs' ancestor, and a notice of such renunciation was brought home to them, or their ancestor.—*Lucas v. Daniel*, 34 Ala. 192; *State v. Conner*, 69 Ala. 216; *Burrus v. Meadors*, 90 Ala. 144; *Duncan v. Williams*, 89 Ala. 351; *Woodstock I. Co. v. Roberts*, 87 Ala. 440; *Walker v. Crawford*, 70 Ala. 567; *Wells v. Sheerer*, 78 Ala. 142. The possession of McAlester 'was permissive, as was shown by the admission in letters written by him to plaintiffs' ancestor; and these writings are to be construed by the court.—*Dows v. Nat. Bank*, 91 U. S. 618; 1 Thompson on Trials, §§ 1065, 1067; *Holman v. Crane*, 16 Ala. 570, 580; *Neilson v. Harford*, 8 Mees. & Wels. 823; *Long v. Rodgers*, 19 Ala. 321; *Brown v. Hatlon*, 9 Ired. 319; *Smith v. Faulkner*, 12 Gray 251; *Kidd v. Cromwell*, 17 Ala. 648; 1 Greenl. on Ev., § 288 b. The fact that McAlester, after admitting that he held title in subordination to the plaintiffs, paid the taxes on the lands in controversy, and included them in a schedule in a bankruptcy proceeding, can have no effect in the establishment of adverse possession by McAlester, and evidence of this fact should have been excluded.—*Miller v. The State*, 38 Ala. 600; *Tayloe v. Dugger*, 66 Ala. 444; *The State v. Conner*, 69 Ala. 216.

SIMPSON & JONES, *contra*.

McCLELLAN, J.—The only defense made to this action is that of adverse possession; it is not controverted that plaintiffs have a perfect chain of muniments of title to the land. The possession of the defendants and of their immediate vendor, Mrs. McFarland, was for a less period than ten years before suit brought. Hence the defense can not be made out without tacking Mrs. McFarland's possession on to that of McAlester, from whom she purchased, which,

[Trufant et al. v. White & Co.]

of course, must have been adverse to the plaintiffs, and continued, impressed with that character, to the sale to and putting in possession of said vendee, *or* without proof that before such sale McAlester's adverse possession had been continued for the statutory period and thus ripened into a perfect title in him. So, there were really but two questions in the case, the resolution of either one of which in defendants' favor entitled them to a verdict and judgment. Namely : *First.* Was McAlester's possession at the time of the sale to Mrs. McFarland, adverse to the plaintiffs, and had it at that date been adverse for a length of time which, added to the possession of Mrs. McFarland and defendants, make out the statutory period, the adverse character of the possession subsequent to McAlester's being confessed ? And, *second,* If McAlester's possession was not at that time adverse, had he for any prior period of ten years had such adverse possession as vested him with the legal title, which, in the absence of a conveyance by him or a subsequent holding by him as tenant or agent for the plaintiffs, or in subserviency to them, for the statutory period, remained and was in him when he sold and conveyed to Mrs. McFarland?

The evidence for the defendants tended to show that McAlester went into possession of the land in 1851, and from that time till his sale of it to Mrs. McFarland, he continued in the possession, exercising acts of ownership over it, treating and using it as if it belonged to him and claiming to own it. On the other hand, certain letters written by him in April, May and July, 1868, to the executors of plaintiffs' ancestor were, together with a letter in reply to one of them, written by one of the executors in May, 1868, introduced by the plaintiffs, and tended to show that at that time, that is at least from April 3d to July 17th, 1868, McAlester recognized the title of plaintiffs as paramount and held permissively under it. We say these letters *tended* to show the subserviency of McAlester's possession, because whether they did show it or not was a question for the jury. They amount merely to written admissions of fact for the consideration of the triers of the facts : they are not such writings as the trial court should have interpreted and declared the effect of as matter of law. These admissions were for the consideration of the jury, in two respects. On the one hand, they went to show that McAlester's possession from 1851 to 1868, though having all the visible *indicia* incident to ownership, was not in truth held under a claim of right in himself, and hence was not adverse to the title

of the plaintiffs. Viewed in this connection, it was open to the jury to find either that McAlester's possession had not, up to that time, been of a character to vest the legal title in him, or that it had been adverse and, therefore, that he had a perfect title when the letters were written. If they reached the latter conclusion, that title continued in McAlester and passed by his conveyance through Mrs. McFarland into the defendants, unless from 1868 on he held possession for a period of ten years as the tenant at will, or agent, or otherwise permissively, under the plaintiffs, the effect of which would be to revest the title in them.—*Allen v. Mansfield*, 82 Mo. 688; *Unger v. Mooney*, 49 Am. Rep. 100; *Echols v. Hubbard*, 90 Ala. 309; *Hoffman v. White*, 90 Ala. 354; *Atkinson v. Patterson*, 46 Vt. 750; *Williams v. Pott*, L. R. 12 Eq. 149.

In determining whether the possession of McAlester, after July, 1868, was that of the plaintiffs, in the sense necessary to divest out of the former and invest in the latter the title acquired by McAlester's possession prior to April 3d, 1868, if they found that such prior possession was of a character and duration to ripen title in him, it was competent for them to look at the evidence introduced by defendants with reference to the payment of taxes on the land as if it were his own by McAlester, and to the fact that he scheduled this land among his assets in the bankruptcy proceeding and claimed it therein as exempted to him; and it follows of course that the court did not err in overruling plaintiffs' objection to this evidence. The other aspect in which the admissions contained in the letters were for the consideration of the jury was this : If they found that McAlester's possession, prior to April 3d, 1868, had not for a period of ten years been adverse to plaintiffs, it then became a matter of controlling importance, of course, to determine whether his subsequent possession was adverse, either of itself for the statutory period, or for a sufficient length of time next before the inception of Mrs. McFarland's possession, as with the term of her holding and that of the defendants would amount to ten years. The bankruptcy proceedings and the payment of taxes, we may remark incidentally, were also competent in this connection *as a part of* the proof necessary to impress this subsequent possession with an adverse character. But it was only a part. If, in this event, the jury found from the correspondence between McAlester and Hanna that the former's possession at that time was held in subordination to and in recognition of the title of plaintiffs, or permissively under them, they could not find that McAlester's

subsequent possession was adverse to the plaintiffs without *proof*—evidence satisfactory to them—that it was held in hostility to plaintiffs' title, and that the fact of such hostility, involving a repudiation of the permissive or subordinate character of the possession as it existed in 1868, *was brought home to the plaintiffs* ten years before this suit was instituted. Being in the possession as the tenant or agent of plaintiffs, or holding in any way for them and in recognition of their title in July, 1868, they had a right to assume that the character then impressed on the possession by these facts continued so long as it was not disavowed or repudiated, and the disavowal or repudiation brought to their knowledge; and their failure to assert their title under these circumstances is to be ascribed to their continued willingness that McAlester should hold for them and in their right, and not to their acquiescence in his wrongful disseizin, since knowledge is always an essential element in acquiescence, and knowledge of a wrong must always be shown before a party can be said to have lost his right to redress it by delay in its assertion. Where there are no relations between the owner and the party in possession, nothing upon which the possession can be referred to the owner's right, he is presumed to know of its wrongful character, knowing, as he must, of the fact of possession. But where a relation does exist upon which the possession is referable to the title, the holder of that title is justified in assuming that the possession is subordinate thereto, and held in recognition thereof, until he knows to the contrary. No kind or degree of actual hostility will of itself convert such a permissive into an adverse possession. No sort of claim of ownership on the part of the party in possession will of itself have this effect. And while it may be open to the jury in some cases to find from the circumstances of the possession that the owner had notice of its hostile and exclusive character, no exclusiveness of possession, no hostility, no claim of right antagonistic to the title will *necessarily* in any case take the place of direct proof of knowledge on the part of the owner that the possession is no longer held in subserviency to him. At most in any case, the circumstances of hostility, exclusiveness and claim of right are only for the jury to consider as *tending* to show knowledge on the part of the owner, the argument being that the circumstances of the possession were such as that he *must have known them,* and from them, that the possession was no longer held under him and in recognition of his title.— *Woodstock Iron Co. v. Roberts,* 87·Ala. 436; *Burrus* v. *Meadors,* 90 Ala. 140; *Baucum v. George,* 65

[Trufant et al. v. White & Co.]

Ala. 259: *E. T. V. & G. R. R. Co. v. Davis.* 91 Ala. 619; *Bernstein* v. *Humes,* 78 Ala. 134; *DeJarnette* v. *McDaniel,* 93 Ala. 215.

When brought to the touch of the foregoing views charges 2, 3 and 4 given for the defendants are affimatively bad. They each require the jury to find for the defendants if they should believe that McAlester's possession was open, notorious and held under a claim of right in himself, though the jury might also believe that the plaintiffs had no knowledge whatever that he asserted any claim to the land except under and in subserviency to their title.

Charge 11 given for defendants was misleading, and should not have been given. Of course, if McAlester was in the open, notorious and continuous adverse possession for ten years after the last recognition of plaintiff's title by the letter of July 17, 1868, he had title, but the jury would probably have understood the word *adverse,* as used in this charge, to mean a claim of ownership in hostility to the plaintiffs, when such claim, without proof of plaintiffs' knowledge of it, would not render the possession adverse to them.

Charges 6 and 7 given for defendants are mere arguments. The court was under no duty to give them, but its action in so doing would not work a reversal of the case.

Charge 12 was misleading: indeed it was invasive of the province of the jury. If the jury had found that McAlester's possession between 1851 and April, 1868, had vested title in him, it would not necessarily follow that this title remained in him and passed to Mrs. McFarland, and from her to the defendants, as the charge in effect declares. As we have seen, it was open to the jury to find that, if McAlester really had title in 1868, it had revested in the plaintiffs before the deed to Mrs. McFarland was executed, through, ten years continuous possession by McAlester subsequent to July 17, 1868, under and in subordination to the plaintiffs.

Charges 5 and 15 given for defendants are unobjectionable, except that the latter is argumentative.

Reversed and remanded.