ANN ARBOR FRUIT & VINEGAR CO. *v.* ANN ARBOR
RAILROAD CO.

136    599
139    ³291
136    599
142    ⁶658
136    599
153    ²642

1. WAYS OF NECESSITY—DURATION.

A right of way arising from necessity is limited in duration to
the continuance of the necessity.

2. SAME—ADVERSE USER—PRESCRIPTION.

One having a right of way as a way of necessity cannot ac-
quire the way by prescription, at least where his user does
not exceed his right; and the fact that such user is in the be-
lief that the way is one of right is unimportant.

3. SAME—NOTICE.

User of a way by one having a right thereto as of necessity,.
after the necessity has ceased, does not become adverse until
the landowner has notice of a hostile claim; and where there
is no change in the character of the user, or knowledge on
the part of the landowner that the necessity has terminated
(*e. g.*, that the ownership of the proprietor of the dominant
tenement extends to a newly opened street), there is nothing
from which such notice can be inferred.

4. SAME—CHANGE OF TITLE.

The effect of a change of ownership of the dominant tenement
after the expiration of the way of necessity, and a subse-
quent user of the way as of right, on the question of notice to
the owner of the servient tenement, is discussed, but *held*
not of controlling importance in the present case, such cir-
cumstances having arisen within the statutory period of lim-
itation.

5. SAME—CONSTRUCTIVE NOTICE—PUBLIC RECORDS.

One over whose land a right of way by necessity exists is not
chargeable with knowledge of an adverse claim to the way
by reason of recitals in deeds from the owners of the domi-
nant tenement, duly recorded.

6. ADVERSE POSSESSION—SUFFICIENCY OF EVIDENCE.

While evidence of a notoriously hostile possession of premises
originally occupied by permission of the owner may some-
times justify a finding of a prescriptive right, *it seems* that
it is only upon the theory that the owner must have had act-
ual knowledge of the hostile claim, and not merely that he
should have known of it.

Appeal from Washtenaw; Kinne, J. Submitted February 5, 1904. (Docket No. 84.) Decided May 31, 1904.

Bill by the Ann Arbor Fruit & Vinegar Company against the Ann Arbor Railroad Company to restrain the obstruction of an alleged right of way. From a decree for complainant, defendant appeals. Reversed.

*Frank E. Jones* (*Jasper C. Gates*, of counsel), for complainant.

*A. J. Sawyer & Son* (*Alexander L. Smith*, of counsel), for defendant.

CARPENTER, J. Complainant's plant is situated adjacent to and west of defendant's railway, between Liberty and Washington streets, in the city of Ann Arbor. At the time this suit was commenced, access was obtained to complainant's property by a way extending from that property, across defendant's right of way, to First street, the nearest street to the east. Defendant proposed to make certain changes in its track which would interrupt and destroy this way. Complainant commenced this suit, and in the court below obtained a decree enjoining said proposed action. The case is appealed to this court, and the sole question is whether complainant has a right to this easement.

The facts material to this decision are as follows: In 1878 Philip Kling and Henry Weber, owning the land now owned by complainant, and other land, conveyed the right of way to defendant's predecessor. This left the land now owned by complainant without means of access to any street, and the deed of the right of way to defendant's predecessor did not provide for any such means of access. It is assumed by both counsel, and in deciding this case we shall assume (see Washb. Easem. [4th Ed.] p. 258), that these facts created a way of necessity across said right of way in favor of the owner of the land now owned by complainant. The way of necessity thus legally

created came into actual existence soon after the conveyance of the right of way, and since that time it has been used as a means of access from the street to the property. It is conceded, however, that soon after November 9, 1886, the date of the conveyance of the property to Allmendinger & Schneider, complainant's immediate grantors, the right to the use of this way as a way of necessity ceased, because (see Washb. Easem. [4th Ed.] p. 260), by the opening of another street (viz., Washington street) on the north, the then owner of the property now owned by complainant had a means of access directly through his own property to a highway.

Though the right to use the way as a way of necessity ceased in 1886 or 1887, it has in fact been used till the present time, and it is the claim of complainant that a right to use the same has been acquired by prescription. If this is true, complainant has a different right from that which was originally created. The way which arose out of the necessity was limited in duration to the continuance of the necessity. Washb. Easem. (4th Ed.) p. 260. It would not be improper to describe this way as a way constructively granted by defendant's predecessor so long as the necessity for its existence continued. The prescriptive way claimed by complainant does not arise from a grant. It arises from the statute of limitations, and it is based upon the contention that for the period prescribed by the statute of limitations—viz., 15 years—complainant has used this way adversely to the rights of defendant. Such a way is not limited in duration, but is held in fee, as appurtenant to the property now owned by complainant.

Has complainant acquired by prescription the right to this easement? It is claimed in its behalf that as early as 1882 its mediate grantor claimed this way as of right, and therefore the statute of limitations then commenced to run. We do not think this claim tenable. At that time, and until after November 9, 1886, there was a right to this easement as an easement of necessity. To our mind, it is impossible that one having a right to a way as a way

of necessity can acquire that way by prescription,—at least when, as in this case, his user does not exceed his right. While one has the right to use an easement by the grant of the owner of the servient tenement, that user cannot be adverse. The acquisition of owner-ship by adverse possession or adverse user necessarily presupposes that the true owner has it in his power to put an end to the adverse holding or adverse user. Mani-festly this is not the case when that owner has granted the right to the holding or user in question.

In reaching this conclusion, we have not over-looked the fact that that excellent work, the American & English Encyclopædia of Law,—see volume 22, p. 1199, of the second edition,—contains this statement: "Use of a way of necessity may be regarded as ad-verse, rather than permissive." In support of this statement are cited three cases: *French* v. *Smith,* 40 N. J. Eq. 361 (3 Atl. 130); *Benedict* v. *Johnson,* (Ky.) 42 S. W. 335; and *Plitt* v. *Cox*, 43 Pa. St. 486. It cannot be contended that either the first or second of these authorities supports the text. We will, however, examine the third, viz., *Plitt* v. *Cox*, 43 Pa. St. 486. The facts in that case are these: Complainant pur-chased a lot which was bounded on one side by a canal basin, and on the other by a strip of land occupied for railway purposes, which separated it from a highway. The land occupied by the railroad had originally belonged to complainant's grantor. He had given a release to the company building the railroad, and apparently reserved the fee. For 25 years complainant passed over this strip of land to go from the highway to his own. The railroad fell into disuse, the track was taken up, and the land re-verted to complainant's grantor, who subsequently sold the same, either mediately or immediately, to defendant. De-fendant commenced to erect a building which would de-stroy complainant's passageway. His right to enjoin this project was sustained; the court saying that complainant and the adjacent lot owners, "when they purchased, had no

outlet landward except across the ground occupied by the railroad to the street, nor have they had at any time since." The decision, however, was not put upon the ground that complainant had a way of necessity, but on the ground that user for more than 21 years "raises such a presumption of right as to entitle the complainant to have the ground remain open," and also on the ground that, by the sale, complainant's grantor "annexed the use of that highway to the ownership of the lots, and that neither he nor any person under him can take it away. His case is like that of one who has sold lots fronting on the common road through his farm. If the road be vacated, and the rights of the public cease, he may not close it up against his vendees, for his grant estops him." It is to be observed that the right of access to a highway under such circumstances is not, strictly speaking, a way of necessity. It differs from a way of necessity in this: That it does not cease with the necessity for its existence. See Washb. Easem. (4th Ed.) p. 266.

It cannot be claimed that this case is authority for the proposition for which it is cited. Under the reasoning of that case, complainant's way was not a way of necessity, and therefore it is not authority for the proposition that use of a way of necessity may be regarded as adverse. We do not think the court intended to decide that complainant had acquired his right both under a grant and adversely while using under that grant. We think that decision holds that the facts warranted the conclusion that complainant acquired his right either by adverse possession or by grant. The learned judge who wrote that opinion did not conceive it necessary to say—what ought to be obvious—that these two conclusions were not consistent, and that both could not at the same time be drawn.

If it were true, as we have held it is not, that one while entitled to a way of necessity could also hold adversely by making a claim that he held of right, it would also be true, as we shall show hereafter in this opinion, that this adverse user would not commence until knowledge of this

claim was brought home to the owner of the servient tenement. And in this case such a principle, if there were such a principle, would not apply, because, as we shall hereafter show, the owner of the servient tenement had no such knowledge.

We conclude, therefore, that the use of the way was not adverse—that is, the statute of limitations did not commence to run—until the right to use it as a way of necessity ceased. The question, then, is how soon after that right ceased (and it ceased, as we have already shown, soon after November 9, 1886) the user of the way may be claimed to be adverse.

When possession is originally taken by the consent of the true owner, and in recognition of his rights, that possession does not become adverse, and the statute of limitations does not commence to run, until the owner knows that the possessor asserts a hostile claim. In *City of St. Joseph* v. *Seel*, 122 Mich. 70 (80 N. W. 987), it was decided, as stated in the headnote:

"The possession of one who enters upon land under license from another claiming title, and who occupies the land for a series of years, doing nothing inconsistent with his holding as licensee, does not begin to be adverse until he notifies the licensor of a hostile claim."

The opinion in that case quotes with approbation from *Smith* v. *Hitchcock*, 38 Neb. 109 (56 N. W. 791):

"Mrs. Smith's entry on this lot was by permission of the owner of the legal title, and her possession thereafter was permissive, and not adverse; nor could it become so until such time as she began to occupy under a claim of right, with notice of such claim brought home to the owner."

In *Burke* v. *Douglass*, 115 Mich., at page 199 (73 N. W. 133), it was said:

"Possession by a vendee under a land contract is not adverse until he has either complied with its terms, or has in some way given notice to his vendor or his assignees that he claims to hold in hostility thereto."

See, also, 1 Cyc. 1032, and numerous authorities there cited. See, also, 1 Am. & Eng. Enc. Law (2d Ed.), p. 798, and numerous authorities there cited.

It is contended that *Pugh* v. *Schindler*, 127 Mich. 191 (86 N. W. 515), is opposed to this rule, and inconsistent with these authorities. There an ejectment suit was brought, and the controversy related to the correct location of the boundary line between the parties, which, it was claimed, was marked by an old fence. There was evidence that the fence was not on the true line; that it was built many years before, under an agreement between the grantors of the two parties that, though used provisionally as the boundary line, it should be removed to the true line when the same was correctly ascertained. The trial court instructed the jury that, if this agreement was made, the possession of defendant and his grantors could not be adverse until notice was given to the opposing party. In connection with that charge, he instructed the jury as follows:

"The fact that the land on either side of the division line has changed hands since the fence was built would not render a possession adverse as to the subsequent owners which was not adverse as between the parties who built the fence. The situation would remain the same as between subsequent owners, no matter how many times it might be conveyed, unless some acts were done or notice given by the subsequent possessors to change the character of the possession from a permissive to an adverse one."

It was held that this was incorrect, the court saying:

"If a grantee of Mr. Hopkins [defendant's mediate grantor] was informed, at the time he made his purchase, that the land he bought included all the land inclosed by the fence, and he entered into its occupancy without any knowledge that Mr. Hopkins' occupancy was permissive, and with the belief that he was the owner of the land, and with the intent to occupy as an owner, his intention to claim the land might thus be shown; and, if the occupancy in all other respects met the requirements of an adverse occupancy for the requisite time to acquire title, we think it would be sufficient."

If this language indicates that a possession originating from an owner's consent may, without his knowledge of a hostile claim, ripen into an adverse title, it should not receive that construction. It should be construed with reference to the question under discussion. The effect of the charge of the trial court then being considered was that the manifestly adverse possession of the new purchaser was not notice to his neighbor of a hostile claim; that the neighbor might in all cases refer that possession to a secret agreement for the location of the fence, made years before. It did not seem to this court that it was just for the adjacent owner to assume that the purchaser had knowledge of that secret agreement, and therefore that he held possession thereunder, and it was intended in that case to decide that the purchase and subsequent possession at least afforded evidence of notice of the hostile claim. The statement in the opinion above quoted, relied upon by complainant, is a part of the argument advanced to support that decision.

Even if *Pugh* v. *Schindler* were authority for the broad proposition contended for by complainant, viz., that the statute of limitations commenced to run when the property was purchased by one who used the way as a way of right, and not as a way of necessity, it would not avail complainant. When Allmendinger & Schneider, complainant's immediate grantors, purchased this property, November 9, 1886, this way existed as a way of necessity. It did not cease to be a way of necessity until after their purchase, and therefore, under the reasoning of this opinion, their user would not be adverse, no matter what their claim might be, until knowledge of that claim was brought home to defendant or to its predecessor. And, if any such claim was made, it was not brought to the knowledge of defendant or to its predecessor. The first owner of the property, then, who could claim the benefit of the doctrine of *Pugh* v. *Schindler*, as construed by complainant's counsel, was complainant itself. Complainant did not acquire the property until 1890. Fifteen years have not elapsed

since that time, and therefore, even under its construction, the case of *Pugh* v. *Schindler* does not aid it.

The principle we have stated and the authorities we have cited relate to the acquiring of an adverse ownership to land, rather than to the acquiring of an easement to cross land. The acquisition of these two rights, however, depends on the same principle, and arises from the same statute of limitations; and it has been expressly held that this principle is applicable to the acquisition of easements. In 22 Am. & Eng. Enc. Law (2d Ed.), p. 1198, under the title of "Prescription," it is said:

"The mere fact that the use of an easement was permissive in its inception does not preclude the acquirement of title by prescription, if it has subsequently become adverse and has so continued for the requisite period; but a use which begins under a license will not be considered adverse until the license is repudiated, and such repudiation is brought to the knowledge of the owner of the servient tenement; and the burden of proving that the use has become adverse is upon the party claiming the easement."

In support of this proposition are cited many authorities, which we have examined, and which sustain the text. See *Barbour* v. *Pierce*, 42 Cal. 657; *Dunham* v. *City of New Britain*, 55 Conn. 378 (11 Atl. 354); *Hill* v. *Hagaman*, 84 Ind. 287; *Patterson* v. *Griffith*, (Ky.) 62 S. W. 884; *Hurt* v. *Adams*, 86 Mo. App. 73; *Nelson* v. *Nelson*, 41 Mo. App. 130; *Taylor* v. *Gerrish*, 59 N. H. 569; *Huston* v. *Bybee*, 17 Or. 140 (20 Pac. 51, 2 L. R. A. 568).

We conclude, therefore, that complainant's user of this easement did not become adverse—that the statute of limitations did not commence to run—until after the way of necessity ceased, and defendant or its predecessor in title had knowledge of a hostile claim. Defendant did not know, until this suit was commenced, that the way of necessity had ceased. It did not know, and it had no reason to know, that when Washington street was opened, some time after the 9th of November, 1886, the then owner

of the property now owned by complainant owned adjacent property which extended to that street. We are compelled to say from the record that defendant and its predecessor in title therefore acquiesced in the use of this way, supposing it to be a way of necessity. This conclusion leaves no room for the supposition that the owner of the servient tenement had knowledge of an adverse claim.

Having determined that the owner of the servient tenement had neither notice nor knowledge of any adverse claim, we think it follows that a prescriptive right to the way does not exist. We do not think that the doctrine of constructive notice has any application; that is, we do not think that possession becomes adverse—that the statute of limitations commences to run—on the theory that defendant should have known, though it did not in fact know, of a hostile claim. We concede that evidence of a notoriously hostile claim and hostile possession is admissible to prove, and that such evidence may in some cases justify the finding of, a prescriptive right. But this finding rests, in our judgment, upon the assumption that the owner of the servient tenement acquired actual notice of the adverse holding.

"No kind or degree of actual hostility will of itself convert such a permissive into an adverse possession. No sort of claim of ownership on the part of the party in possession will of itself have this effect. And while it may be open to the jury in some cases to find from the circumstances of the possession that the owner had notice of its hostile and exclusive character, no exclusiveness of possession, no hostility, no claim of right antagonistic to the title, will *necessarily* in any case take the place of direct proof of knowledge on the part of the owner that the possession is no longer held in subserviency to him. At most, in any case, the circumstances of hostility, exclusiveness, and claim of right are only for the jury to consider as *tending* to show knowledge on the part of the owner; the argument being that the circumstances of the possession were such as that he *must have known them*, and from them that the possession was no longer held under him and in recognition of his title." *Trufant* v. *White*, 99 Ala. 526 (13 South. 83).

See, also, *Benje* v. *Creagh*, 21 Ala. 151.

If we are not correct in the foregoing conclusion, we think it may be held in this case that the owner of the servient tenement did not have constructive notice of an adverse claim. It is urged that defendant or its grantor was bound to know of the adverse claim, because such claim was asserted in deeds duly recorded. In support of this contention, counsel invoke the rule that possession or use of any kind of real property is constructive notice to the whole world of the paper title under which the possession or use is enjoyed. *Hommel* v. *Devinney*, 39 Mich. 522, 526; *Allen* v. *Cadwell*, 55 Mich. 8, 11, 12 (20 N. W. 692); *Miner* v. *Wilson*, 107 Mich. 57, 59, 60 (64 N. W. 874). This principle, in our judgment, has no application. The deeds containing these recitals were made after the conveyance by Kling & Weber to defendant's predecessor. Defendant was not chargeable with notice of the contents of these deeds, and the possession and use of the easement were in accordance with a constructive grant from defendant's grantor. Neither defendant nor its grantor was under an obligation to examine into the source of a title which it had a right to assume proceeded from itself. That constructive grant was a sufficient justification for and explanation of the rights which to their knowledge were asserted and were being exercised.

"Where there are no relations between the owner and the party in possession,—nothing upon which the possession can be referred to the owner's right,—he is presumed to know of its wrongful character, knowing, as he must, of the fact of possession. But where a relation does exist upon which the possession is referable to the title, the holder of that title is justified in assuming that the possession is subordinate thereto, and held in recognition thereof, until he knows to the contrary." *Trufant* v. *White,* 99 Ala., at page 535 (13 South. 86).

It is doubtful if any deed contained a recital which indicated that the way was claimed as of right, except that which conveyed the property to complainant. This deed,

as already stated, was not made until 1890; and, even if defendant was bound, as we have held that it was not, to know its contents, the period since that time, being less than 15 years, would be insufficient to give complainant a prescriptive right. Nor was there anything in the character of the use of this way, either before or after it had ceased to be a way of necessity, to apprise the owner of the servient tenement that it was claimed as a way of right.

We think it may be inferred from the testimony that before this way ceased as a way of necessity, and perhaps for more than 15 years before this suit was commenced, those using the way believed it to be appurtenant to the property now owned by complainant, and believed that they had a continuous right to use the same. It is unfortunate that this belief was ever entertained, for it has doubtless led to expenditures which will prove wasteful. But neither defendant nor its grantor created this belief. Indeed, they did not know of it until very recently. If those who entertained this belief had examined their chain of title, and acquainted themselves with the facts, they would have known that this way was not a way of right, but that it originated as a way of necessity. It follows from this opinion and the authorities cited (see, also, *Inhabitants of Deerfield* v. *Connecticut River Railroad*, 144 Mass. 325 [11 N. E. 107]) that this belief did not make the user adverse.

It results from these views that the decree appealed from must be reversed, and the bill dismissed, with costs.

The other Justices concurred.