# Lecroix *v.* Malone, *et al.*

## *Ejectment.*

(Decided Nov. 26, 1908.   47 South. 725.).)

1. *Ejectment; Recovery by Tenant in Common.*—Against every person not claiming under a tenant in common, one tenant in common may sue for and recover the entire tract in his own name.

2. *Adverse Possession; Permissive Possession; Presumption.*—Permissive possession is presumed to continue permissive until notice is brought home to the holder of the legal title of a change from a permissive to a hostile or adverse possession, whether such permissive possession is expressed or arises by implication on account of a mistaken holding by an adjoining owner without any intention of claiming beyond the true line.

3. *Same; Change of Character; Notice to Owner.*—Where the entrance is, in its inception, not hostile and under claim of right, notice of the change in the character of possession must be brought home to the owner to impute laches to him as the basis of limitation, under the theory upon which adverse possession is based as to title.

4. *Same; Evidence.*—The evidence in this case stated and examined and held to show that the possession of the real estate was permissible and in recognition of the rights of the true owner, so that the possession did not ripen into title by adverse possession in the absence of notice of a change in the character of possession.

[Lecroix v. Malone, et al.]

5. *Trusts; Death of Trustee; Abeyance of Title.*—Although at common law the fee to land is never in abeyance and descends to the trustee's heirs, under section 1044, Code 1896, the trust estate does not descend to the heirs of the trustee and on the death of all the trustees of an express trust the fee is in abeyance until new trustees. are appointed.

6. *Adverse Possession; Permissive Possession.*—A permissive possession cannot be converted into an adverse holding until the appointment of new trustees, where all of the trustees of an express. trust were dead, since until the appointment of a new trustee there was no one on whom notice of the change in the character of the possession could be served.

7. *Limitation of Action; Laches.*—Laches cannot be imputed where there is no one who can sue or be sued, nor can the statute of limitations be started to running until there is some one who can sue or be sued.

8. *Adverse Possession; Elements.*—A possession to be adverse must operate to disseize or oust some other person of his possession or right of possession.

9. *Same; Possession; Burden of Proof.*—In the absence of evidence expressly or impliedly evincing a hostile possession the presumption is that such possession is in subordination to the legal title, and a party claiming title by adverse possession must prove his entry and continuous occupancy for the statutory period with the intent to claim the land as against all persons.

10. *Evidence; Conclusion.*—A question asked a witness as to when a person acquired certain real estate is objectionable as calling for a conclusion; and if referring to the title the deed conveying the land is the best evidence.

11. *Appeal and Error; Harmless Error; Exclusion of Evidence.*—The exclusion of evidence as to when the grantee acquired property is not prejudicial where the deed conveying the property to such person is in evidence.

12. *Pleading; Striking Out Pleas.*—The striking out of special pleas of the statute of limitation as answers to a suit in ejectment is not error, since under the plea of not guilty any defense is available.

13. *Ejectment; Evidence; Admissibility.*—The deed being operative under the statute of uses, such deed was admissible in evidence where it embraced a part of the land in controversy and formed a link in plaintiff's chain of title, although the grantor therein was one of the grantees to uses.

14. *Boundaries; Evidence.*—Where there is no fixed and official establishment by monument, testimony of a witness as to the location of the corner, based on his statement of the surrounding facts which determined its location, was admissible.

15. *Adverse Possession; Instruction.*—A charge asserting that if the jury found that the predecessor of defendant had been in the exclusive and hostile possession of the land for ten years plaintiff could not recover, was erroneous, where the evidence tended to establish paper title in the plaintiff to the entire tract, and the entry by defendant's predecessor in title as to a part of the premises in controversy was permissive in its inception, and there was no evidence of disseizin as to such party.

[Lecroix v. Malone, et al.]

16. *Evidence; Oponion; Conclusion.*—A statement by one in posses-
sion of the land that if the adjoining owned would begin measuring
from a proper point he would get all the land he was entitled to,
was properly excluded, as at most it was the expression of an opinion
as to where the point was located.

17. *Ejectment; Evidence.*—Where the issue was as to the location of
lots fronting on a street, testimony as to the map of the city and
the numbering of lots and deeds to city property as conforming to the
numbers of an old map, was admissible.

18. *Appeal and Error; Law of the Case.*—The opinion of the Su-
preme Court settling questions of law on appeal is the law of the
case on a subsequent trial of the same.

APPEAL from Limestone Circuit Court.

Heard before Hon. D. W. SPEAKE.

Ejectment by George Malone, and others, as trustees,
against Ida R. Lecroix. From a judgment for plaintiff,
defendant appeals. Affirmed.

W. T. SANDERS and R. W. WALKER, for appellants.—
Adverse possession, uninterrupted, for ten years creates
title which will defeat ejectment.—78 Ala. 61; 92 Ala.
246; 98 Ala. 181; 104 Ala. 191; 62 Ala. 83; 68 Ala. 383;
18 Ala. 417; 90 Ala. 309; 80 Ala. 304; 1 Ency. Law,
825-883; 1 Cyc. 1135, 1136, 1137, 1153; 6 Lawson R. R.
& P. 4402; Tiedman Real Property ,546. Twenty years
possession is good against all claimants.—*Matthews v.
McDade,* 72 Ala. 377 and cases cited in West Reprint of
this case. Declarations of persons in possession admis-
sible to show character of possession.—82 Ala. 139; 84
Ala. 208; 104 Ala. 192; 1 Ency Law, 891 and note 2;
1 Cyc. 1148-50.

What constitute adverse possession.—1 Cyc. 1027;
1 Ency. Law, 796, 822, 832 and 834. What are acts of
ownership.—1 Cyc. 984, 986, 1149-50; 1 Ency. Law, 823,
824, 828, 831; Tiedman Real Property, 523.

The general presumption of law is that possession is
subordinate to the title, but where one is shown to have
been in possession for the period of limitation, apparent-

[Lecroix v. Malone, et al.]

ly as owner such possession will be presumed to be adverse.—1 Ency of Law, second ed. 889 and note 1890; 6 Lawsons Rights, Remedies and Practice, page 4404. Evidence of general reputation as to ownership is admissible.—1 Ency. of Law, second ed. 829; 88 Ala. 346. Section 1541 of the Code in reference to filing declaration of adverse possession has no application to one claiming under purchase, or to the facts of this case.— 121 Ala. 664; Sec. 1541, Code of Alabama. Title by adverse possession descends to one's heirs.—Tiedman on Real Property, page 543; Cyclo. of Law and Procedure, Vol. 1, page 1001, 1003, 1004 (a).

T. C. McClellan and W. R. Walker, for appellee. The burden of proving adverse possession is upon the party who asserts it.—*Pittman v. Pittman,* 124 Ala. 306; *Beasley v. Howell,* 117 Ala. 499; *Lucy v. Tenn. C. R. R. Co.,* 92 Ala. 250; *Bowling v. M. & M. Ry. Co.,* 128 Ala. 550; 1 Cyc. 1143 et seq. "The possession of land which may ripen into a title must be adverse and under a claim of right, not permissive nor in subordination to the right or title of another must be actual, open, notorious, exclusive, hostile and continuous for the period of ten years."—*Beasley v. Howell, supra; Alexander v. Wheeler,* 78 Ala. 167; *Woodstock Iron Co. v. Roberts,* 87 Ala. 436; *Lucy v. T. & C. R. R. Co., supra; Marray v. Holye,* 92 Ala. 559; *Johnson v. Oldham,* 126 Ala. 309. To constitute adverse possession there must be possession and a present claim of ownership.—*Edmundson v. Anniston City Land Co.,* 128 Ala. 589. Character of ownership can not be proved by reputation.—*Woodstock Iron Co. v. Roberts,* 87 Ala. 436; *Benji v. Creagh,* 21 Ala. 151. Any person without color or title, or *bona fide* claim of inheritance or purchase, who enters upon land and asserts adverse possession, must file notice thereof in the office of the Judge of Probate of the county in which the

land is situated.—Code, 1541, 1546; *Adler v. Prestwood,* 122 Ala. 367; *Holt v. Adams,* 121 Ala. 664; *Sledge v. Singerly,* 139 Ala. 246, 37 Son. Rep. 98.

Where a relation exists upon which the possession is referable to the title, the holder of the title is justified is assuming that the possession is in subordination to that title, and this is especially true where the party entering into possession did so by permission or license from those owning the title or in control of the premises. —*Trufant v. White,* 99 Ala. 526; *Dothard v. Denson* 72 Ala. 544; *Jones v. Pegram,* 84 Ala. 210; *Wells v. Sheerer,* 78 Ala. 142; *Bernstein v. Humes,* 60 Ala. 582; Ib. 71 Ala. 260; *Stiff v. Cobb,* 126 Ala. 381; *Peabody v. U. S.,* 175 U. S. 546, 44 L. Ed. 267; *Johnson v. Oldham,* 126 Ala. 309; *Alexander v. Wheeler,* 69 Ala. 332; Ib. 78 Ala. 167; *Brown v. Cockrell,* 33 Ala. 38; *Humes v. Bernstein,* 72 Ala. 546; Ib. 75 Ala. 241; *Woodstock Iron Co. v. Roberts,* 87 Ala. 436, 440; *Collins v. Johnson,* 57 Ala. 304; *Croft v. Thornton,* 125 Ala. 391; *Vandiver v. Stickney,* 75 Ala. 225; *Robinson v. Allison,* 124 Ala. 325. When the title is shown not to attend the possession, but that it resides in another, the law, not favoring wrong, will not presume that the possession was taken, or held and claimed in hostility to the title, but to the contrary, mere possession is *prima facie,* under such circumstances, presumed to be in subordination to the legal title.—*Dothard v. Denson* 72 Ala. 554; *Trufant v. White,* 99 Ala. 526; *Normant v. Eureka Co.,* 98 Ala. 181; *Eureka Co. v. Normant,* 104 Ala. 625; *Robinson v. Allison,* 97 Ala. 596; Ib. 124 Ala. 325; *Parks v. Bennett,* 104 Ala. 438; *Merritt v. Phenix,* 48 Ala. 87; *Lucy v. T. & C. R. R. Co.,* 92 Ala. 246; *Wiggins v. Kirby,* 106 Ala. 262; *Adler v. Prestwood,* 122 Ala. 367; *Ponder v. Cheeves,* 104 Ala. 307, 313; *Holt v. Adams,* 121 Ala. 664; *Alexander v. Wheeler,* 78 Ala. 167; *Donehoo v. Johnson,* 120 Ala. 438; *Croft v. Thornton,* 125 Ala. 391; *Hess v. Rud-*

[Lecroix v. Malone, et al.]

*der,* 117 Ala. 525; *Stiff v. Cobb,* 126 Ala. 381; *Davis v. Caldwell,* 107 Ala. 526, 530; *Woodstock Iron Co. v. Roberts,* 87 Ala. 436, 440; 1 Cyc. 1145.

HARALSON, J.—This is an action of ejectment by appellees, Malone et al., against appellant, Lecroix, to recover a strip of land between their respective holdings.

We think it is clear that the appellees showed a good paper title. It is true that as to a part of the land, the title conveyed in 1835 was from a party who was only shown to have had a half interest. But as against every person not claiming under a tenant, we hold that one tenant in common may sue for and recover the entire tract in his own name. Warvelle on Ejectment, §§ 122, 123; notes to *Marshall v. Palmer,* 50 Am. St. Rep. 842.

Persons who do not claim through some of the tenants are strangers to that title.

Both parties, as to title, claim through a common source. Appellees, Malone et al., were the first purchasers, and bought a portion of lot 12, which was in the northwest corner of a block of land in the town of Athens. The whole dispute arises from the difficulty of fixing the northwest corner of lot 12, which is the starting point. The deed of appellees, dated in 1835, conveyed a plat of ground fronting on Marion street, and described as starting at the northwest corner of the lot and square, and extending south 70 feet, thence east 90 feet, thence north 70 feet to North street, thence west along the street to place of beginning.

Afterwards, in 1871, a strip directly east of this plat was conveyed, extending the orignal purchase 10 feet further east, making it 100 feet deep instead of 90.

The whole west frontage of the square was shown by adding together the feet frontage of the lots sold from

the common source—each deed being for a given number of feet front—also by measuring from the public sidewalks on the north and the south. And the northwest corner of lot 12 was ascertained, there being no other means, by proof of the point of crossing of the sidewalks of North and Marion streets along the northern and western sides of the lot, and the continued recognition of the line of the street, and of private ownership and occupancy to this corner thus ascertained, and by proving this corner to be correct by showing that measuring from this point south to the next corner, and from the southwestern corner of the block north to this assumed corner, and giving each owner the front on Marion street called for by his deed in feet, each person would have his full quantity of land; and also by the occupancy by appellees under their deed of 70 feet front on Marion street measuring south from the assumed northwest corner for lot 12 for many years, not only against, and without dissent from the holder of the common source of title, but also the subsequent purchasers from that source through whom appellant claims and holds the adjoining lots south and east of appellees' land; we thus hold that the appellees' paper title was good, and nothing else being in the way would authorize a recovery.

The appellant, then, is relegated to her defense founded upon prescription and limitations.

There was an abundance of proof that for a much longer period than that of the statute of limitations, the appellant and those under whom she claims, have been in possession and claiming the land in question. The appellees set up against this that the appellant's possession was at first either a mistaken one, by an adjoining owner beyond his line with the intention to claim only up to the true line, or was expressly permissive and sub-

[Lecroix v. Malone, et al.]

ordinate to the appellees' right of property, and that, though the appellant, and those under whom she holds, may have afterwards intended to claim adversely, there was no notice to appellees or to any holder of their titles, so as to bind them beyond 10 years, before the commence-ment of this suit of such change of intention, and that, consequently, there is no statutory bar.

If this reply was made out it would defeat the defense of limitations.

It is firmly settled, by repeated decisions on our part, that a permissive possession, whether expressly so, or one arising by implication in the case of a mistaken holding by an adjoining owner without any intention of claiming beyond the true line, is presumed to continue to be of the same character, until notice is brought home to the holder of the true title of the change of the per-missive possession into one hostile and adverse.

The theory upon which adverse possession becomes a perfect title is that the true owner has by his own fault and neglect failed to assert his right against the hostile holding for the full period of the statute.

If the entry then, is not hostile and under claim of right in its inception, notice of any change in the charac-ter of the possession must be brought home to the owner to impute laches or neglect to him as the basis of limi-tations.

Of course, we do not mean to say that this notice must be direct and express, but, if it rests upon implication, it must be founded upon such facts and circumstances as to bring home to the owner information that the hold-ing has become hostile.

"In such case, while it may be open to the jury to find from the circumstances of the possession that the owner had notice of its hostile and exclusive character, no ex-clusiveness of possession, no hostility, no claim of right

antagonistic to the title will necessarily in any case take the place of direct proof of knowledge on the part of the owner that the possession is no longer held in subserviency to him."—*Trufant v. White,* 99 Ala. 526-535, 13 South. 83; *Johnson v. Oldham,* 126 Ala. 309, 28 South. 487, 85 Am. St. Rep. 30; *Alexander v. Wheeler,* 69 Ala. 332-340; *Hess v. Rudder,* 117 Ala. 525-528, 23 South. 136, 67 Am. St. Rep. 182.

As to the land south of the church extending back 90 feet, there was much evidence tending to prove an entry on the part of defendant's father by permission and in full recognition of the plaintiffs' title. There was also evidence independent of this tending to prove a conscious holding by him without claim of right beyond the line of his lot as there asserted, which would tend to show a mistaken possession beyond the true line without claim of right beyond such line.

The plaintiffs held and occupied and used the strip south of the church before and after Mr. Raisler, defendant's father, occupied the lot south of the church property—there seems to have been a fence running east and west dividing the properties—then there is evidence of a permissive occupation by Raisler up to the church wall; then there was evidence that in October, 1891, on a survey of the lines, he insisted that the true line was 6 or 8 feet south of the church instead of 16 and that the surveyor to get the church property of 70 feet front, should have commenced in the street for the northwest corner of lot 12; and there was evidence that at this time Raisler impliedly admitted, by not denying the charge, that he was shown and knew the line when he joined his fence to the church, inclosing all the strip of the church. He is supposed to have known that he had in possession, his full frontage without the strip, and all this tends to show a mistaken or permissive occupan-

cy, or one beyond his true line without any claim except to the true line. If the jury believed from the evidence that the possession was thus held in its inception, under the clear statement of the law in the case of *Trufant v. White,* 99 Ala. 526, 13 South. 83, there could be no adversary holding without notice to the holder of the legal title of the change in the character of the possession.

The deed to this land was to parties as trustees, all of whom died prior to 1860, up to which time and for many years afterwards there was no possession by defendant, or those under whom she claims and no other trustees were appointed until recently, when the plaintiffs below were appointed.

By common law the fee could never be in abeyance and it would descend to a trustee's heirs like his own land; but by our statute (Code 1896, § 1044) this descent to heirs was forbidden, and thus the fee was put in abeyance prior to any pretense of disseisin.—*Whitehead v. Whitehead,* 142 Ala. 163, 37 South. 929; *Read v. Rowan,* 107 Ala. 366, 18 South. 211; *Allison v. Little,* 85 Ala. 512, 5 South. 221; *McDougald's Adm'r v. Carey,* 38 Ala. 320.

As there was no person holding the seisin when the defendant's predecessors attempted to convert the permissive or mistaken possession into a hostile holding, no notice of the change in the character of the tenure was given, or could be given, and thus there was no adverse possession prior to the appointment of new trustees. This seems to be a correct conclusion. Laches cannot be imputed or limitations started when there is no one who can be sued or who can sue. A possession to be adverse must operate to disseise or oust some other person of his possession or right of possession. As there was, after the death of the trustees, no seisin or legal

title in existence, the possessor without claim of title could not give notice to a proper party of his intention to hold adversely.—*Underhill v. Mobile Ins. Co.,* 67 Ala. 45; *Pickett v. Pope,* 74 Ala. 122; Angell on Lim. (6th Ed.) §§ 386-390; *Taylor v. Horde,* 2 Smith Lead. Cas. pt. 2 (8th Ed.) 674; *Green v. Liter,* 8 Cranch, 229, 3 L. Ed. 545.

In reference then, to the strip of land recovered on the south of the church, it is impossible to say the jury were not justified in finding for the appellees.

As to the land on the east, the conveyance was to different trustees who were not all dead until 1893. As to this there was no paper title shown by appellant, nor is it argued in her behalf that there was. The deed from Maclin to Raisler in 1870 under which, if any, claim of title must be made, conveys land west of a line commencing at the southeast corner of the church and running through lots 11 and 12 to the street. As lot 11 is south of 12, this line must run south, instead of north, and thus would not include the strip sued for east of the church. The appellant then must stand entirely upon limitations. The entry on this strip must thus have been permissive in its character, or a trespass without color of title. If it was the former, the jury might, without transcending the just limits of their authority, have found as they did, and, if the original entry had been adverse, we cannot say the jury might not have been justified in finding the same way.

We are not to presume the act of entry was hostile, without a color of right, unless the circumstances establish that conclusion satisfactorily; and it is incumbent on the party claiming by adverse possession to prove not only his entry and continuous occupancy but the intent to claim the property.

In this case there was more apparent right to claim the land south of the church than that on the east, yet there was evidence which tended to show that the entry on that to the south was either expressly permissive or by mistake without any intention to claim beyond the true line. The two strips adjoined, and Raisler, the adjoining owner, claimed by the purchase through one deed. The entry on both strips seems to have been at the same time. There is no proof as to the original character of the entry on the land on the east. The presumption in the absence of evidence expressly or impliedly evincing a hostile character to that it is in subordination to the legal title.—*Trufant v. White,* 99 Ala. 526, 13 South. 83; *Normant v. Eureka Co.,* 98 Ala. 181, 12 South. 454, 39 Am. St. Rep. 45; *Robinson v. Allison;* 97 Ala. 596, 12 South. 382, 604; Id., 124 Ala. 325, 27 South. 461; *Dothard v. Denson,* 72 Ala. 554; *Newton v. L. & N. R. R. Co.,* 110 Ala. 474, 19 South. 19; 2 Mayfield's Dig. 74, et seq.

Under these circumstances, nothing appearing to the contrary, the jury might find that the possession of the strip of land on the east, like that on the south, did not become adversary until October 19, 1891, when Raisler made claim to the property. Then what was there against their right to so conclude?

The interview with the church people in 1879, during the life of Maclin, on the occasion of covering the church, and the attempt to erect scaffolding poles on the south of the church, is not connected with the eastern strip.

The witness, Hoffman, testified that there was no fence east of the church in 1879; that one was put there afterwards and remained a long time, but had been gone a good while. If this inclosure was permissive, of course it would be ineffective to found title. If it was taken as a declaration of hostile claim, it, or some substituted

occupancy, would have to be continuous for 10 years to create title. If abandoned the true title is in possession by construction, and there must be a new and original hostile entry. It is not shown when this inclosure was made, or how long it lasted.

The only evidence we find in the record sustaining the defense of adverse possession of this plat prior to the survey on October 19, 1891, is the testimony of the appellant, who says she was born in 1870, and that ever since she can recollect her father, Raisler, was in possession of the land south and east of the church, claiming it.

How far back this dated, and how the possession was evidenced, or how and to whom the claim was made, was not shown. Leaving the testimony of this witness out, we find nothing in the record showing the actual, notorious and continuous occupancy with claim of right for 10 years prior to the commencement of this suit.

The declaration of the party in possession of the length of his occupancy and claim would only give character to his existing possession.

It was not beyond the province of the jury to find that the proof of the adverse holding as to the eastern strip was not satisfactorily shown to antedate the survey of the lines of the church property by Henderson, and to fix that date as the 19th of October, 1891. There was no error, therefore, in refusing to give the defendant the affirmative charge as to either part of the land sued for, or to grant a new trial.—*Cobb v. Malone,* 92 Ala. 630, 9 South. 738.

There was no error in sustaining the objection to the question to the witness Surginer, "How long after that, before he (Raisler) acquired the property? This asked for the conclusion of the witness. If it necessarily referred to title, and of this the deed was the best evidence, there was no injury, as the deed was introduced.

[Lecroix v. Malone, et al.]

The striking out the special pleas of limitation was not error. We have frequently held that "not guilty" was a plea under which any defense was available.— *Wisdom v. Reeves,* 110 Ala. 418, 18 South. 13; *Richardson v. Stephens,* 114 Ala. 238, 21 South. 949; Code, § 1532.

The deed from Lane to De Woody et al., was properly admitted in evidence. It embraced a part of the land in controversy and formed a link in the plaintiff's chain of title. The fact that the grantor was one of the grantees to uses is immaterial, as the deed operated under the statute of uses.

The objections to, and motion to exclude the testimony of the witness, Henderson, in reference to the location of the northwest corner of lot 12, we think were properly overruled. There was no fixed and official establishment by monument of the corner in question. It had to be determined, therefore, inferentially. The witness only frankly stated all the surrounding facts and circumstances which determined his location of the corner as being at the point of the intersection of the sidewalk on North and Marion streets along the western and northern side of the block.

The appellant requested the court to charge the jury that if they found from the evidence that more than ten years before the suit was brought Raisler was in exclusive, notorious and hostile possession of the land sued for, claiming it as his own, that he so continued to his death and possession was continued successively by his representative until the land was sold, and by the purchaser and the defendant afterwards, the plaintiff could not recover. If this charge had been confined to the land east of the church, it seems it should have been given; but it included the strip to the south of the church, and since there was as to it, evidence clearly

tending to show an original permissive entry and holding subordinate to the true title, and as there was no evidence of a disseisin the charge was, therefore, correctly refused.

The trustees under the deed of 1835, were dead when Raisler purchased and accepted the land fronting on Marion street, and no others were appointed until just before the commencement of this suit. His entry could not be hostile and adverse unless there was some one to be disseised; and if it was permissive and subordinate, could not be changed to a hostile and adverse holding without notice to the holders of the legal title. The charge then, was thus too broad by having included in it the land south of the church.

The refusal of the court to allow the defendant to ask the witness, Henderson, if on the occasion of the survey Raisler had said that if the church people would begin measuring from the proper point, they would get all the land they were entitled to, was not erroneous. It was no statement of fact, but at most an expression of opinion as to where the point of beginning was located. There was no exclusion of anything said showing the claim of right on the part of Raisler— that was fully shown by all the facts, and it is not contested that on that occasion he manifested all the hostility of claim and possession in his power.

The former appeal in this case (143 Ala. 657, 41 South. 724) settled the question of the admissibility of the orders appointing trustees for the church.

The appellant introduced the deeds by the administrator to Lecroix; and of Lecroix to her of the next lot south of the church property fronting on Marion street.

The testimony as to the frontage in feet on Marion street of the lots south of the church property, and that the named feet for each was held without including the

church property claimed south of the church, and that 70 feet north from them would locate the northwest corner according to plaintiff's contention was relevant and proper, as tending to show title in the plaintiff and none in the defendant.

The testimony of Turrentine as to the map of the city, and the numbering of lots in all deeds to city property as conforming to the numbers of the old map, was relevant and proper as throwing light on the questions at issue, and the relative location of the lots.

We discover no error in the record, and the judgment of the lower court is affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.